496 So.2d 1236 (1986)
STATE of Louisiana
v.
Elton BURNETT.
No. 86-KA-217.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
John M. Mamoulides, Paul Connick, Dorothy A. Pendergast, Office of Dist. Atty., Gretna, for plaintiff-appellee.
John H. Craft, Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
GAUDIN, Judge.
This appeal concerns aggravated rape and the degree of proof necessary for a conviction.
Elton Burnett was convicted of this crime and the thrust of his appeal is that the evidence, which consisted primarily of the victim's testimony, was not sufficient to justify a guilty verdict.
Alternatively, appellant contends that at most he could have been found guilty of forcible, not aggravated, rape.
After carefully considering the testimony and evidence, we are not in agreement with Burnett's assertions. We affirm his conviction by a 12-person jury and his sentence to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
On August 12, 1985, the 18-year-old victim and Burnett went to the movies and were in the process of walking home when the attack occurred. From the transcript:
"Q. What happened?
A. (By the victim) We was walking and talking and he got ready to put his arm around me and I wasn't thinking nothing of it, and he put his arm around me and he started smoking and I was trying to break away from him, and that's when he pulled me in the weeds. And when he pulled me, the way he had me I fell down and my face hit on the grass and he was just choking me and he was laying on me. And I was trying to get to break away from him but I couldn't, and some kind of way I turned over. And when I turned over on my back and he had me like this, he was telling me to, you know, unbuckle my pants. I was trying to get up. So he unbuckled my pants and pulled my pants down and underclothes down and stuck his penis in me. And he couldn't make penetration because *1237 I had the tampon in and I told him, `No,' because I had the tampon.
Q. Did he put his penis in your vagina?
A. Yes, he did.
Q. Do you know whether he ejaculated?
A. No, sir.
Q. You don't know?
A. I don't know.
Q. How did he grab you?
A. He had me around my neck.
Q. With his arm?
A. Yes, sir.
Q. What did he do?
A. He started choking me real tight.
Q. And you say he pulled you in the weeds?
A. Yes.
Q. When you hit the ground, did he fall on top of you?
A. Yes, he did.
Q. And after you managed to turn over, how did he have you?
A. He had me like this.
Q. He had you like this while he was raping you?
A. Yes, he did.
Q. Did you try to get away?
A. Yes, I did.
Q. Were you able to scream?
A. No, sir.
Q. Why not?
A. Because the position he had me in I couldn't breathe that much and I was trying to get up from the grass. I was pulling the weeds up, but I couldn't move. He just kept choking me."
When the victim finally reached her house, she said:
"...I was weak and I couldn't walk. My eyes was closed and I couldn't see.
"...I went straight upstairs to go tell my mama and my brother what he had done to me."
The victim was taken immediately to East Jefferson General Hospital and then to Lakeside Hospital.
Burnett, who was 21 years of age at time of trial in January, 1986, admitted having sex with the victim but he said she was willing. He also said that before he and the victim engaged in intercourse in the vacant lot, the victim had been beaten up by another woman using brass knuckles.
The victim testified that Burnett told her "...to tell my mother I got in a fight with two white girls, and they had brass knuckles." But, the victim said, she told her mother what actually had happened, that she had been thrown down and raped by Burnett.
Among the prosecution witnesses were Drs. Raul Guevara and Michael Cohen and police officer Donald Latcher.
Dr. Guevara was stipulated an expert in emergency medicine. He testified that he examined the victim at East Jefferson Hospital. The results of the exam revealed that the victim had a subconjunctinal hemorrhage, which is a hemorrhage on the surface of the eyeball, blood on her ear surfaces and ear drums and contusions on her face. Dr. Guevara testified that the victim's condition was consistent with either a blow to the face or a choking situation.
Dr. Cohen was stipulated an expert in obstetrics and gynecology. He testified that he examined the victim at Lakeside Hospital and found that she was bruised, that she was suffering from emotional trauma and that she had recently engaged in sexual intercourse.
Lacher testified that he visited the crime scene approximately four hours after the rape occurred. He retrieved, among other things, a white shoe and a burgundy ribbon. The victim identified the shoe and the ribbon as hers. Also found at the scene was a Tampax.
The jury convicted Burnett of violating LSA-R.S. 14:42, which, in pertinent part, reads:

*1238 "Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one of the following circumstances:
"(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
"(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution."
Forcible rape, on the other hand, is described in LSA-R.S. 14:42.1 as a rape where "...the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."
In State v. Foley, 456 So.2d 979 (La. 1984), the Supreme Court of Louisiana stated:
"As to the gravity of the offense, the legal definition of aggravated rape in LSA-R.S. 14:42(2) is virtually identical to that of forcible rape. Distinctions are drawn based on the degree of force and the resistance of the victim. The jury determines the permissible punishment by a verdict which fits the crime by assessing the degree of force employed. State v. Willie, 422 So.2d 1128 (La. 1982)."
(Underlining provided.)
If the victim's testimony in the instant case was accepted by the jury, as obviously it was, the record establishes conclusively that Burnett raped the victim with such force that she arrived at her home with her eyes swollen almost shut and bloody and with blood trickling from her ears. She could barely talk, she spat up blood and her face was distorted and swollen. So grave was her condition that she was taken to a hospital forthright.
We cannot say that a rational juror, considering the testimony and evidence most favorable to the prosecution, could not have found all elements of aggravated rape proven beyond a reasonable doubt. Thus, the standard proclaimed in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and in many subsequent Louisiana cases was not offended.
It is true, as Burnett argues and as declared in State v. Willie, supra, that the legal definition of this form of aggravated rape is practically synonymous with that of forcible rape. This is apparently in line with legislative intent. A jury, after considering all facets of a case, particularly the amount of force used and the victim's resistance, can choose between (1) aggravated rape and its harsh penalty and (2) forcible rape with a lesser penalty. The Supreme Court of Louisiana, in State v. Parish[1], 405 So.2d 1080 (La.1981), at page 1087 explained:
"...it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape, thereby assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed."
The mandatory penalty for aggravated rape is the one given to Burnett, while the forcible rape penalty is not less than five nor more than 40 years, with at least two years of the sentence being without benefit of parole, probation or suspension of sentence.
In addition to finding no merit in Burnett's assignments of error, we examined the record for errors patent and found none. Appellant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] See also 429 So.2d 442 (La.1983), State v. Parish on remand.