537 So.2d 857 (1989)
STATE of Louisiana
v.
Donald HENSLEY.
No. 88-KA-495.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1989.
Bruce G. Whittaker, Twenty-Fourth Judicial District Indigent Defender Bd., Gretna, for appellant.
John M. Mamoulides, Dist. Atty., Twenty-Fourth Judicial Dist., Parish of Jefferson, Jodi McMillian, Gaynell Williams, Asst. Dist. Attys., Gretna, for appellee.
Before CHEHARDY, C.J., and GRISBAUM, and DUFRESNE, JJ.
*858 CHEHARDY, Chief Judge.
Donald Hensley appeals his conviction for violation of LSA-R.S. 14:65 (simple robbery), his subsequent conviction under LSA-R.S. 15:529.1 as a second felony offender, and his resulting sentence of 14 years' imprisonment at hard labor.
Early on the morning of May 29, 1987, Julia Miles was driving on the Westbank Expressway in Marrero when a tire on her car blew out. She pulled her car to the side of the road and was approached by Donald Hensley, the defendant, who offered to change the tire. She opened the trunk and discovered the spare tire was flat. Hensley offered to take her to his home, which he said was near, to repair the tire. She refused and was preparing to drive off on the damaged tire, when Hensley pulled out a gun and told her to get out. Miles got out of the car, leaving her purse inside, and Hensley got in the car and drove away.
Later the same day, Hensley and another man attempted to cash a West Jefferson Hospital payroll check at Schnell's Restaurant in Marrero. The check was made out to Julia Miles. The men presented identification to Charles Rotollo, the Schnell employee, explaining the payee was their aunt. Rotollo cashed the check. Fifteen minutes later the men returned to Schnell's, attempting to cash another check made out to Miles. This time Rotollo to cash the check. After they left, Rotollo called Julia Miles and learned the check was stolen. That afternoon Donald Hensley went back to Schnell's and again attempted to cash the check. Rotollo and another employee detained Hensley and telephoned police, who arrived and arrested Hensley. After being advised of his Miranda rights, Hensley told the police he was trying to cash the check for a friend of his named Mark Smith.
Hensley was charged by bill of information with violation of LSA-R.S. 14:64, armed robbery, and pleaded not guilty. On November 18, 1987, Hensley's motion to suppress the victim's identification of him was heard. Hensley contended the photographic lineup was unduly suggestive.
During the hearing Julia Miles identified Hensley's photograph again and also identified Hensley face-to-face in the courtroom. The court granted the motion as to the photographic lineup, but refused to suppress the in-court identification.
Trial commenced immediately after the motion hearing and was completed on the following day. Donald Hensley testified in his own behalf, stating that he had been in Schnell's only once, on the afternoon of the day in question, and that he had attempted to cash a check at the request of a neighbor of his named Mark Smith. Hensley said Smith told him the check was his girlfriend's and Smith said he could not cash it himself because he had no identification. The jury returned a verdict of guilty of the lesser-included offense of simple robbery.
The defendant filed motions for a postverdict judgment of acquittal and for a new trial, which were denied. The State then charged the defendant as a habitual offender under R.S. 15:529.1, billing him with two prior felony convictions. The defendant moved to quash the multiple-offender bills, asserting he had not been Boykinized properly in those convictions. Although the court quashed evidence of one conviction, it allowed evidence of the other and found defendant to be a second felony offender. Thereafter the defendant appealed.
In his first assignment of error, defendant asserts the trial court erred in only partially granting his motion to suppress the identification. He contends the photographic lineup was unduly suggestive because his picture was included in each set of photographs shown to the victim, citing Miles' failure to identify his photo until she had been shown several sets of photographic lineups. He argues this cemented his image so firmly in the victim's mind it was inevitable she would identify him when confronting him at the motion hearing. He claims the in-court identification was hopelessly tainted by the use of the photographic lineup. He asserts the State failed to present testimony of any of the police officers involved in the photographic lineups or to introduce all the photos shown to Ms. Miles.
*859 We find no merit to this argument. Deputy James Broadwater testified that he showed the first set of photographs to the victim and that set did not contain a picture of the defendant, but did contain a picture of Mark Smith. He stated the victim said the robber was not any of the persons shown in the first set of photographs but that she knew one of the men shown, indicating Mark Smith.
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the U.S. Supreme Court listed the factors to be considered in determining the admissibility of an in-court identification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of uncertainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.
Hensley argues Miles' opportunity to view the perpetrator at the time of the crime was limited by the fact that it took place at 5:30 in the morning on an unlit stretch of road as dawn was breaking. She was in her assailant's presence for 10-15 minutes. At one point he was illuminated by the dome light of the car. She admitted she has impaired vision in one eye, but was not wearing glasses at the time.
In State v. Ruffin, 475 So.2d 1375 (La. App. 5 Cir.1985), this court pointed out that, even where another identification is suppressed due to impermissible suggestiveness, the in-court identification is not inadmissible if it is reliable and has an independent basis. A pretrial identification is not a prerequisite to an in-court identification. State v. Long, 408 So.2d 1221 (La. 1982).
Although the in-court identification was made six months after the crime occurred, Ms. Miles identified the defendant immediately and positively when asked if she saw the perpetrator in the courtroom. She testified the light was good at the time of the crime, that the defendant was with her for 10 or 15 minutes, and that she observed him point a gun at her.
Despite the victim's inability to identify the defendant when shown the earlier sets of lineup photographs, we find the in-court identification was reliable on its own merit. The prior failed identification goes to the weight of the testimony, not to its admissibility. As did the trial court, we find the in-court identification convincing.
In his second assignment of error, the defendant contends the trial court erred in finding him a multiple offender for purposes of enhancing his sentence under R.S. 15:529.1.
The prior felony conviction accepted by the court was made pursuant to a guilty plea on an aggravated burglary charge in the Twenty-fourth Judicial District Court. The defendant contends the State failed to establish he made a knowing and intelligent waiver of his constitutional rights as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
The defendant argues that the waiver-of-rights form and Boykin colloquy introduced by the State do not show he was advised of his right to remain silent at trial. Accordingly, he asserts, the Boykinizing in that case was inadequate and the conviction should not have been used to find him a second felony offender.
He claims a guilty plea is invalid if the court does not expressly tell the defendant that the privilege against-self-incrimination applies "at trial," citing three Louisiana casesState v. Martin, 382 So.2d 933 (La. 1980), State v. Robicheaux, 412 So.2d 1313 (La.1982), and State v. Age, 417 So.2d 1183 (La.1982).
In State v. Yarbrough, 418 So.2d 503 (La.1982), however, our Supreme Court, pointing out the court had moved away from rigid application of such a rule, stated the record must be viewed as a whole to determine whether the defendant understood his rights.
In State v. Terrase, 468 So.2d 729 (La. App. 5 Cir.1985), this court upheld a colloquy similar to the one used here. We pointed out that prior to accepting the guilty plea, the trial judge first ascertained that the defendant was advised of the trilogy *860 of Boykin rights. Only after the defendant's attorney indicated he was satisfied that the defendant understood his rights and the consequences of the plea did the trial judge accept the plea. We ruled that the colloquy and the rights form signed by the defendant clearly showed he was informed of, and knowingly and voluntarily waived, his rights. Further, we found the record showed the trial judge conducted a thorough inquiry into the validity of the defendant's plea before accepting it.
In the case at bar, the guilty plea in the prior conviction was entered after a similar inquiry by the trial judge. He explained the Boykin rights to the defendant. He then inquired of both the defendant and the defendant's attorney whether the defendant fully understood his rights. Only after being assured of the knowing and voluntary decision to make the plea did the trial judge accept the plea.
Accordingly, we find no merit to this assignment of error.
In reviewing the record, we have found two discrepancies between the sentencing and the minute entry and commitment. First, the defendant was not given credit at the sentencing hearing for time served, as required by LSA-C.Cr.P. art. 880, although the minute entry and commitment do reflect credit given for time served. Because the minute entry and the commitment are correct under the law, however, this error is of no moment.
Secondly, the judge stated the defendant's sentence was to be served without benefit of probation or suspension of sentence, in accordance with R.S. 15:529.1(G). However, the minute entry and the commitment do not reflect this.
Where there is a discrepancy between the transcript and the minute entry, the transcript should prevail. State v. Lynch, 441 So.2d 732 (La.1983). Accordingly, because the sentence is required to be served without benefit of probation or suspension of sentence, the minute entry and the commitment must be corrected to reflect that condition.
Therefore, the district court is ordered to correct the minute entry and the commitment to reflect that the sentence is to be served without benefit of probation or suspension of sentence. As corrected, the conviction and sentence are affirmed.
CORRECTION OF SENTENCE ORDERED AND, AS CORRECTED, AFFIRMED.