615 So.2d 355 (1993)
STATE of Louisiana
v.
James THOM.
No. 92-KA-911.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1993.
*357 Harry J. Morel, Jr., Emile R. St. Pierre, Jerry Rome, Dist. Atty.'s Office, Hahnville, for plaintiff/appellee, State of La.
Robert A. Chaisson, Chaisson & Chaisson, Destrehan, Victor A. Bradley, Jr., Gregory A. Miller, Norco, for defendant/appellant, James W. Thom.
Before KLIEBERT, BOWES and CANNELLA, JJ.
BOWES, Judge.
Defendant was convicted of aggravated rape, a violation of LSA-R.S. 14:42 and aggravated burglary, a violation of LSA-R.S. 14:60. The trial court sentenced defendant *358 to life imprisonment, without probation, parole, or suspension of sentence for the aggravated rape conviction and to thirty years at hard labor for the aggravated burglary conviction, to be served concurrently. Defendant now appeals.

FACTS
On April 8, 1991, at 6:35 a.m. the victim and her two year old daughter were at their home in St. Charles Parish. The victim's husband had already left for work. As the victim unlocked her front door a man, she later identified as defendant, entered her home. The victim began screaming and defendant hit the victim on the top of her head with a flashlight. When defendant stated he would stop hitting the victim if she stopped screaming, the victim complied.
Then, the victim saw that her daughter had awakened and was standing in the room. She pleaded with defendant not to hurt her daughter. Defendant told the victim to take her clothes off and to lay down. She removed her shirt, slip and stockings. He put the flashlight down, unzipped his pants and had sexual intercourse with the victim. During this incident, the victim was able to see a tatoo consisting of red lips on defendant's left groin area. The victim's daughter was seated on the sofa during the act. Afterward, the victim got up and held her daughter; defendant went into the kitchen and drank some coke. He complained about the barking from the victim's dog and went with the victim to put the dog in her bedroom.
When they returned defendant ordered the victim to take off her remaining clothes. She was too nervous to do so and defendant removed her clothing. He ordered her to kneel and forced his penis into her mouth. Then, defendant unzipped his pants and again had sexual intercourse with the victim. The victim's daughter remained in the room seated on the sofa.
After this second attack, defendant wiped off the coffee table and flashlight and took cash from the victim's wallet. He tied the victim's ankles and wrists toward her back with a telephone cord and gagged her with a dish towel. Defendant took all the change from the victim's wallet and again wiped the items he had touched. When defendant returned to the coffee table and picked up the flashlight, the victim thought that he was going to kill her. Instead, defendant put the flashlight in his pants and started to leave. However, before he did, defendant repeatedly asked her if she was going to tell anyone about the incident. The victim replied "no."
When she was able to free herself, the victim ran into her bedroom, put on a robe, and called a neighbor. Subsequently, the police were called. The victim was taken to a local hospital where a rape examination was conducted; she received stitches for her head wound and treatment for her rape.
From the victim's description of her attacker, a composite photograph was made and published in the newspaper. The law enforcement authorities received information identifying the suspect as defendant. After the victim identified defendant's photograph in a lineup he was arrested. Defendant had a tatoo which was identical to the one the victim described. At the trial, the victim positively identified defendant as her assailant.

ANALYSIS
In this appeal, defendant urges sixteen assignments of error. Defendant filed assignments of error numbers fourteen, fifteen, and sixteen as supplements; however, he has failed to brief these supplemental assignments of error. Accordingly, these supplemental assignments of error are considered abandoned. Uniform Rules, Courts of Appeal-Rule 2-14.2. However, number sixteen seeks review of the record for errors patent and is unnecessary as this Court routinely reviews every criminal record for errors patent on the face of the record anyway.
In his first assignment of error, defendant argues that the trial judge erred in denying his motion for change of venue. He argues that the questioning of prospective jurors, prior to voir dire, and a rally outside the courthouse prior to the start of *359 trial, show the prejudices which prevented an impartial and fair trial in St. Charles Parish.
A change of venue is warranted whenever a defendant proves that "by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending." LSA-C.Cr.P. art. 622. In deciding whether to grant a defendant's motion for change of venue, the trial court must consider if prejudice, undue influence, or any other reason will deny the defendant a fair trial in the parish in which the prosecution is pending. State v. Clark, 442 So.2d 1129, 1132 (La.1983); State v. Walters, 514 So.2d 257, 263 (La.App. 5 Cir.1987), writ denied 523 So.2d 811 (La. 1988). The decision to grant or deny a change of venue rests with the discretion of the trial court. LSA-C.Cr.P. art. 784. This discretion will not be overturned without a showing of error or abuse of discretion. State v. Walters, 514 So.2d at 264.
In this case, the trial court conducted a hearing on defendant's motion and concluded that defendant did not bear his burden of proving that he could not obtain a fair trial in St. Charles Parish.
After a careful review of the record, we find that any prejudice which resulted from publicity in this case was not such that defendant could not obtain a fair and impartial trial in St. Charles Parish. Therefore, there was no abuse of the trial court's discretion in denying defendant's motion for a change of venue.
In his second and third assignments of error, defendant alleges that the trial judge erred in denying defense's challenge for cause of prospective jurors Sharon Mulder and Brenda Genter. He argues that the two prospective jurors should have been excused for cause under LSA-C.Cr.P. art. 797 because they were not impartial.
The federal and state constitutions guarantee the accused in a criminal proceeding the right to a trial by an impartial jury. U.S. Const. Amendment VI; La.Const. Art. 1, Section 16. In addition, LSA-C.Cr.P. art. 797 states as follows in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
* * * * * *
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. However, when a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but on further inquiry demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. State v. Wiggins, 518 So.2d 543, 548 (La. App. 5 Cir.1987), writ denied 530 So.2d 562 (La.1988) and 569 So.2d 979 (La.1990).
A trial court is granted great discretion in ruling on a challenge for cause, and such a ruling will not be disturbed unless, when reviewing the entire voir dire as a whole, there is an indication that there was an abuse of discretion. State v. Wiggins, 518 So.2d at 548-549.
During the voir dire, prospective juror Sharon Mulder testified that when she was fourteen years old a man exposed himself *360 to her. Defendant contends that Mulder's lack of therapy or treatment for the affects of this incident affected Mulder's ability to be impartial in this matter. However, the record indicates Mulder's ability and willingness to decide the matter impartially. Mulder testified that the perpetrator of the crime against her received psychiatric help. She agreed that "justice was served" in her case. She had not had any problems since the incident. Nor did she believe that her experience would taint her view of the instant case or affect how she heard the evidence.
Brenda Genter testified that her sister was raped fourteen years earlier. She did not believe that the crime against her sister would affect her verdict in the instant case. Although she stated that her sister's rape would cause her to "look at the facts more closely," Genter stated she could be impartial and very fair. Our review of Genter's testimony reveals that she was able and willing to be an impartial juror.
We find that, for the above reasons, the challenges for cause as to Mulder and Genter were not warranted. Accordingly, we hold that the trial court did not abuse its discretion in denying defendant's challenges for cause as to these two prospective jurors.
In assignment of error number four, defendant contends that the state's exercise of three of its five peremptory challenges on black prospective jurors showed a systematic exclusion of prospective jurors because of their race. He further argues that the state's reasons for the challenges were not valid.
A peremptory challenge by the state shall not be based solely upon the race of the juror. LSA-C.Cr.P. art. 795 (B); Powers v. Ohio,___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). LSA-C.Cr.P. art. 795. Furthermore, under the Equal Protection Clause, a defendant may object to race-based exclusions of jurors through peremptory challenges whether or not the defendant and the excluded prospective jurors share the same race. Powers v. Ohio, ___ U.S. at___, 111 S.Ct. at 1373.
In Batson v. Kentucky, 476 U.S. at 96, 106 S.Ct. at 1723, the United States Supreme Court presented the factors to be used in establishing a prima facie case of purposeful discrimination based solely on evidence about the prosecutor's exercise of peremptory challenges. To establish a prima facie case, a defendant must show that he is a member of a cognizable racial group; that the prosecution exercised peremptory challenges to remove from the venire members of defendant's race; and that the facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude the prospective jurors form the petit jury on account of their race. State v. Gilmore, 522 So.2d 658, 661 (La.App. 5 Cir. 1988); State v. Young, 569 So.2d 570, 576-577 (La.App. 1 Cir. 1990), writ denied 575 So.2d 386 (La.1991).
Once the defendant has established a prima facie case of purposeful discrimination, the burden is upon the prosecution to present a neutral explanation for the challenges. State v. Gilmore, 522 So.2d at 661.
In this case, after objection by defendant, the prosecutor, Mr. St. Pierre, gave his reasons for excusing the three black prospective jurors:
MR. ST. PIERRE:
Your Honor, I think the operative word here is systematically. There were five challenges that we exercised thus far. I candidly admit that it appears that three of the five appear to be black people. One of them, Miss Raymond, the rationale, and I'm going to put on the record the rationale for those three plus the other two, the rationale for Miss Raymond, she was a single parent who works at Monsanto for RPM which is an hourly job. This is going to be a long trial. I do not think, I didn't want to impose a hardship on a single parent with an hourly job.
The second black was one Herman Tate. I don't know what gender to use.

*361 It appeared that the person was a female, but I can't say, but this person testified that this person has problems sitting in judgment of their fellow man. That was the reason for that one, purely, simply.
The other, Mr. Diggs who was just excused, in watching him before, sitting as a prospective juror, his arms were crossed in a combative-type stance, he had an air about him, or I felt that he had an air about him. He doesn't have a significant work history. He was of tender age. He was the same age group as the white man who sat on the end who we excused, Mr. Mize, in that he was, I didn't think he was of suitable age and discretion and background to render a decision in this case. It has nothing whatsoever to do with race.
The other two, the other one charge I've covered Mr. Mize already, he was the 18 year oldMr. Clement who had everything from a vacation to marital problems to psychotherapy to being stressed out between his marriage and his job as excuses. Every one of my decisions was based on a rational basis. Color has never had anything to do with it.
We have considered the facts presented in the record and all relevant circumstances contained in the record. Although the record does not indicate the racial composition of the jury, it does show the prosecutor did not exercise peremptory challenges to excuse only persons who were black. None of the prosecutor's questions or statements during voir dire support any inference of a discriminatory purpose. Thus, defendant did not establish a prima facie case of purposeful discrimination. Furthermore, the prosecutor's reasons for his challenges as to the three black prospective jurors indicate racially neutral reasons. Thus, even assuming, arguendo, that defendant established a prima facie case of discrimination, the prosecutor's articulated reasons and the record adequately rebut that showing.
Accordingly, we find that this assignment lacks merit.
In his assignments of error numbers five and ten, defendant argues that the trial judge erred in denying defense's motion to exclude evidence of aggravated oral sexual battery and the trial judge erred in admitting victim's testimony regarding the presence of the child.
It is his contention that because the oral sexual battery "was clearly not an `integral part' of the rape," evidence of this crime was not admissible under LSA-C.E. art. 404. He argues that the admission of this evidence constituted reversible error and that the prejudicial effect of this evidence greatly outweighed its probative value.
Defendant also contends that testimony regarding the presence of the victim's two year child during the rape was not an integral part of the crime and should have been excluded. Admission of this testimony was prejudicial and constituted reversible error.
References to other crimes have been found to be admissible under the theory of "res gestae." State v. Madison, 345 So.2d 485, 494 (La.1977); State v. Camp, 580 So.2d 957, 960 (La.App. 5 Cir.1991). The concept insofar as it relates to other criminal acts has been redefined in LSA-C.E. article 404B(1), which states:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Herein the evidence of an oral sexual battery on the victim may have been introduced to prove an element of the aggravated burglary.[1] Accordingly, the reference *362 to the oral sexual battery was admissible as an integral part of the act constituting the aggravated burglary offense.
Furthermore, the oral sexual battery is clearly an integral part of the charged offenses, because of the close proximity in time and place to defendant's acts of entering the victim's home without consent, striking the victim on the head and the acts constituting the aggravated rape. See State v. Camp, 580 So.2d at 959-960. Thus, the trial court did not err in admitting evidence of the oral sexual battery on the victim.
Similarly, we find no error in admitting evidence that the victim's child was present during the rape. Contrary to defendant's argument, it is not necessary for its introduction, that this evidence be an element of the offenses. The facts of the events clearly show that the child's presence in the room occurred while the acts constituting the rape were committed. Their proximity in time and place to the rape support a finding that they are an integral part of the rape. Furthermore, the child's presence is admissible to show that the victim was prevented from physically resisting the rape for fear of harm to her child. See State v. Clark, 437 So.2d 879, 884-885 (La.App. 2 Cir. 1983), writ denied, 442 So.2d 460 (La. 1983).
In his sixth assignment of error defendant argues that the "wearing of pins to the courthouse and the rally held outside by the gallery spectators served to put undue pressure on the jury and influence the jury." He contends that the trial court's denial of his motion to have the pins removed denied his Sixth Amendment right to an impartial trial.
The appropriate analysis is to determine whether or not the practice of the wearing of the pins was inherently prejudicial. The practice is inherently prejudicial if it posed an unacceptable risk of prejudice to defendant's right to a fair trial. If wearing of the pins is not inherently prejudicial, then the inquiry is whether or not defendant showed actual prejudice caused by the practice. See Holbrook v. Flynn, 475 U.S. 560, 572, 106 S.Ct. 1340, 1347-48, 89 L.Ed.2d 525 (1986) and Norris v. Risley, 918 F.2d 828, 830 (9th Cir.1990).
From our review of the record, we have determined that the spectators' wearing of the pins and the rally outside the courthouse out of the jury's presence were not so inherently prejudicial as to pose an acceptable threat to the right to a fair trial. There was no unacceptable risk of prejudice by these events. Nor has defendant shown any actual prejudice. The spectator's pins were removed prior to the jury's presence in the courtroom and none of the jurors saw the rally.
Accordingly, we conclude that this assignment lacks merit.
In assignment of error number seven, defendant contends that it was reversible error to allow Pam Pourciau, the emergency room nurse at the hospital where the victim was treated, to testify about the details of how the rape occurred. He admits that it was permissible for the nurse to testify that the victim "presented herself as a rape victim." In assignment of error number twelve, defendant contends that the hospital records, like the testimony of Pam Pourciau, should have been excluded as hearsay.
LSA-C.E. art. 803 states in pertinent part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(4) Statements for purposes of medical treatment and medical diagnosis in connection with treatment. Statements made for purposes of medical treatment *363 and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.
Herein, Nurse Pourciau testified about the victim's statements of her complaints and how her physical and sexual attack occurred. The hospital records state facts of how the victim's attack occurred, the victim's condition, and her treatment. These statements were pertinent to the diagnosis of the victim's physical and psychological condition and the type of trauma which the victim suffered. They were also pertinent to determine the treatment which was necessary for the victim's physical and psychological injuries.
Therefore, the trial court did not commit reversible error in allowing this evidence at trial.
In assignments of error number eight, defendant contends that four pictures introduced by the state, which show wounds to the victim's head, were inadmissible given the inflammatory nature of the pictures and their cumulative effect, and that it was reversible error for the trial court to allow their introduction into evidence.
The standard to be used to determine the admissibility of allegedly gruesome photographs is whether the probative value of an allegedly gruesome photograph outweighs its probative effect upon the jury. The evidence must also be relevant for some purpose. The evidentiary value of the photograph must be balanced with its tendency to overwhelm reason and to associate the accused with crimes without sufficient evidence. State v. Moore, 498 So.2d 82 (La.App. 5 Cir.1986).
We have examined the contested photographs introduced into the record for their relevancy and alleged inflammatory and prejudicial effect. The photographs are relevant to show the severity of the attack and bodily harm suffered by the victim. The bodily harm suffered is relevant to prove elements of the aggravated rape, including circumstances where there are threats of "great and immediate bodily harm, accompanied by apparent power of execution." LSA-R.S. 14:42 A(2); See State v. Freeman, 517 So.2d 390, 394 (La. App. 5 Cir.1987).
Additionally, the other evidence against defendant is so overwhelming that the jury would not be prejudiced by these pictures alone to reach the wrong conclusion. Accordingly, we hold that the probative value of the photographs clearly outweigh any possible prejudice they may have created in the jury's mind.
Defendant next contends that the trial court erred in admitting State Exhibit No. 8, a flashlight seized from the vehicle of defendant's father, because the victim could not identify it as the flashlight used to strike her. Defendant further argues that the prejudicial effect of admitting this evidence greatly outweighed any probative value and, therefore, was reversible error. We find no merit to these contentions.
The flashlight which was introduced was identified as the one which was seized from the automobile of defendant's father. Although she could not positively identify this flashlight as such, the victim stated that it looked similar to the flashlight used to strike her. Thus, the state established that this evidence had some connection to the case. The state presented sufficient evidence to show that the flashlight was what the state claimed it to be, a flashlight seized from the automobile of defendant's father. Therefore, the evidence was properly identified and admissible.
In addition, after reviewing the record, we cannot say that the introduction of the flashlight was unfairly prejudicial. The other four flashlights which were obtained by the police during their investigation of this case, were also admitted into evidence, with an explanation as to where they were obtained and presented to the jury for viewing with the other evidence. The weight to be given to this evidence was a question for the jury. See State v. Caston, 583 So.2d 42, 46-47 (La.App. 2 Cir.1991). Accordingly, this assignment is meritless.
*364 In assignment number 13, the defendant alleges that the trial judge erred in re-reading the jury charge.
During deliberations the jury requested further instructions on the definition of aggravated rape and forcible rape. Defendant contends that the mere re-reading of the rape statutes by the court was reversible error because it did nothing to alleviate the jurors confusion regarding the difference between aggravated rape and forcible rape. This argument essentially is one of sufficiency of the evidence. He contends that the evidence presented does not support the jury's verdict of aggravated rape. The thrust of his argument is that if the jury had received the proper charge as to the definition of aggravated rape and forcible rape, the jury would not have been confused as to the elements involving the degree of use of force. Without this confusion, the jurors would not have found defendant guilty of aggravated rape.
After a careful review of the record before us, we conclude that based upon the facts herein, and viewing the evidence in a light most favorable to the prosecution, the jury could determine that a sufficient amount of force was, in fact, used to constitute the crime of aggravated rape, that the state proved that the victim resisted the act to the utmost and her resistance was overcome by force or that the victim was prevented from resisting the act by threats of great and immediate bodily harm, accompanied by the apparent power of execution. LSA-R.S. 14:42(1) and (2); State v. Burnett, 496 So.2d 1236, 1238 (La.App. 5 Cir. 1986).
Accordingly, we find no reversible error in the trial court's actions in re-reading the jury charges.
We have also conducted an error patent review in compliance with LSA-C.Cr.P. art. 921 and have discovered the following errors.
The first is that the trial court did not wait the required three days after conviction before sentencing defendant; nor did defendant waive that waiting period. See LSA-C.Cr.P. art. 873. Here, defendant was convicted on July 10, 1992 and sentenced on July 14, 1992.
Two of the four days between defendant's conviction and sentencing were a Saturday and Sunday. Under LSA-R.S. 1:55 A(1) and (2), Saturday is considered at least a half-holiday and Sunday is a legal holiday. Pursuant to LSA-C.Cr.P. art. 13, a half-holiday is considered a legal holiday. Because the period is less than seven days, the legal holidays, Saturday and Sunday, are not included in the computation of the time period. LSA-C.Cr.P. art. 13. Thus, only two days lapsed between the conviction and sentence of defendant.
The purpose of the three day delay between conviction and sentence is to allow the defendant time to file post-trial motions, including a new trial motion which must be filed between verdict and sentence. If the defendant does not expressly waive the delay, a sentence imposed within the three day period is void. Official Revision Comments (a) and (c) to LSA-C.Cr.P. art. 873; State v. Johnson, 275 So.2d 405 (La. 1973); State v. Tarto, 517 So.2d 1216, 1217 (La.App. 4 Cir.1987). We find such to be the case here and therefore the sentences are void. Accordingly, we vacate the sentences in this matter and remand the case for resentencing on both convictions.
Secondly, we note that the minutes of the trial do not reflect the absence or presence of defendant during jury selection on July 7, 1992, when the trial reconvened after recess number two. However, the presence of defendant is mentioned during this period of time in the transcript by the prosecutor during voir dire when he stated that the prospective jurors "could look at him [defendant]." When there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Hensley, 537 So.2d 857, 860 (La.App. 5 Cir.1989).
Accordingly, we order that the minute entry of July 7, 1992 be amended to reflect that the defendant was present during this period of jury selection.
For the above discussed reasons, defendant's convictions are affirmed, but the *365 sentences imposed are vacated and the case is remanded for resentencing.
CONVICTIONS AFFIRMED, SENTENCES VACATED AND CASE REMANDED.
NOTES
[1] Aggravated burglary is defined in La.R.S. 14:60 as follows:

Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.