FREDERICKA HOMBERG WICKER, Judge.
^Defendant, Dwayne Magee, appeals his convictions for second degree murder in violation of La. R.S. 14:30.1 and two counts of assault by drive-by shooting in violation of La. R.S. 14:37.1. We find that the trial court did not err in denying defendant’s challenge for cause with regards to potential juror George Lozano. Furthermore, we find that the trial court did not. err in refusing to admit a prior statement by defendant’s mother, who did not testify at trial. Accordingly, we affirm defendant’s convictions and sentences.

FACTUAL AND PROCEDURAL HISTORY

On the morning of June 22, 2012, defendant, Dwayne Magee, was driving in the left lane of Ames Boulevard in Marrero, Louisiana. Defendant’s cousin, Kemon Magee, sat in the truck’s passenger seat, and Kemon Magee’s girlfriend, Ariane Melerine, sat in the back seat of the truck. A black Nissan Maxima drove alongside the truck in the right lane and the three occupants of the Nissan Maxima, later identified as Kevin Jackson, Keyton Francois, and Dinah Jones, began pointing and laughing at the trio in the truck. According to the trial testimony of |3four witnesses, defendant proceeded to remove a firearm from the backpack sitting beside him in the truck and open fire on the occupants of the Nissan Maxima. The Nissan Maxima veered off the roadway and landed close to a nearby ditch where the two passengers crawled out.
At trial, Deputy Gabriel Faucetta of the Jefferson Parish Sheriffs Office testified that on June 22, 2012, he was dispatched to the scene of the shooting on Ames Boulevard. Upon arrival, Deputy Faucet-ta observed two people running out of the canal near the roadway. He testified that they informed him of the shooting and that the vehicle had crashed into the canal. Upon inspecting the vehicle, Deputy Fau-cetta found the victim, Kevin Jackson, unresponsive in the driver’s seat, having sustained a gunshot wound to his head.
Heather Palmer, a witness to the shooting, testified that she was driving down Ames Boulevard when she saw defendant’s truck traveling in the opposite direction and veering towards her lane. Palmer saw the truck’s driver lean forward and look towards the passenger side of his vehicle. Palmer further testified that *449 when their vehicles were parallel, she heard gunshots and observed defendant with his back to her, leaning towards the passenger side of his vehicle. After passing defendant’s truck, Palmer looked in her rearview mirror and saw that a second car had swerved off the road. Kim Henry, a second eyewitness to the shooting, testified that she was driving down Ames Boulevard in the right lane when gunshots were fired at the vehicle in front of her. She then observed a woman jump out of the backseat of the vehicle screaming for help. Henry stopped her car to render aid and called 9-1-1.
The woman who jumped out of the vehicle was identified as Dinah Jones. Jones testified that she spent the night before the shooting at Keyton Francois’s house. On the morning of the shooting, Kevin Jackson picked Francois up to give |4him a ride to work and offered to drop Jones off at her home on the West Bank. As they were traveling down Ames Boulevard, Jones noticed a pick-up truck pulling up alongside their vehicle. She testified that Francois made an off-color remark about the occupants of the truck, which made her laugh. Jones testified that she noticed that the passenger side window of the truck was rolled down. She then saw the driver of the truck retrieve a handgun, point it out the passenger side window, and start shooting at their vehicle. When the police arrived, Jones provided them with a description of the truck and of the driver, whom she later identified from a photographic lineup. At trial, when asked how sure she was that the person she identified was both the shooter and the driver of the truck, Jones responded, “[a] hundred percent.”
Francois’s testimony confirmed Jones’s version of events. He testified that he made a joke about the woman in the backseat of the truck, which made Jones laugh. He testified that the driver, Kevin Jackson, subsequently made a joke about his job. Francois saw the truck pass them in the left lane and slow down before the driver of the truck started shooting at them. Francois testified that he clearly saw the passenger in the vehicle leaning back in his seat while the driver shot at their vehicle. Francois subsequently identified defendant as the shooter from a photographic lineup. At trial, he testified that he was “positive” that the driver was the shooter and pointed out that he had “no reason to lie.”
Through the use of camera surveillance in the area, the truck was ultimately identified as belonging to Ms. Denise Butler. Since her son, Dwayne Magee, fit the description of the shooter, officers staked out his home in New Orleans while waiting for a warrant. On June 25, 2012, officers watched Dwayne Magee enter the truck with a blue backpack. They followed and ultimately arrested him as he parked near the restaurant where he worked. After his arrest, defendant waived his | BMiranda[1] rights and submitted to questioning. In his first statement, he denied ever being on the West Bank on June 22, 2012. However, when confronted with surveillance videos, he made a second statement in which he admitted that he had fired shots at the Nissan. He told the detectives that he believed the occupants of the Nissan were about to fire on him and his passengers. Defendant later identified Kemon Magee and Ariane Melerine as the passengers in his truck at the time of the shooting. Detective Travis Eser-man testified that three separate lineups containing photographs of defendant, Kemon Magee, and Ariane Melerine were compiled and presented to three witnesses: *450 Jones, Francois, and Palmer. The only identification the three witnesses made from the photographic lineups was of defendant.
Detective Matthew Vasquez testified that he received information that defendant’s truck had been searched pursuant to a warrant. The items seized from the vehicle included a .40 caliber handgun, a 12-gauge shotgun, and ammunition for both firearms. The handgun, its ammunition, and a magazine were all found inside a blue backpack with the name “Dwayne Magee” written on it. Two fired shell casings were also recovered from the floor of the truck. Sergeant Joel O’Lear, an expert in firearms and tool mark analysis for the Jefferson Parish Crime Laboratory, testified that the casings and the fired projectiles recovered from the scene were fired from the handgun found in defendant’s backpack.
One week before trial, defendant gave a third statement to investigators regarding the shooting. Accompanied by his attorney, he told detectives that his cousin, Kemon Magee, was the shooter. At trial, defendant reiterated this accusation against Kemon Magee, testifying that his cousin was involved in a gang and had told him that he had already committed another murder. He further testified that he was afraid of his older cousin and had accepted responsibility for |fithe shooting out of fear. Defendant also testified that the handgun used in the shooting was given to him by his younger brother “a week or two” before the shooting. In an undated letter that defendant wrote to Kemon Magee from jail, defendant stated that he had confessed to the crime because he believed that the police were going to implicate defendant’s younger brother, Wayne Magee.
The defense also called Edward Hueske, an expert in the field of shooting reconstruction, to establish whether the shooter was more probably seated in the driver’s seat or the front passenger seat of the truck. Mr. Hueske testified that he was able to analyze four out of the nine shots fired at the victim’s vehicle and opined that three out of the four shots he analyzed were unlikely to have been fired from the driver’s seat. However, Mr. Hueske admitted that several important factors, including the distance between the two vehicles and the speed at which they were traveling at the time of the shooting were unknown. Mr. Hueske further stated that any inaccurate measurements by investigators at the scene would greatly impact his analysis and the reliability of his opinion.. He also testified that his opinion would change if he knew that there were two cartridge casings found inside defendant’s truck and that defendant gave a statement admitting to discarding the other casings that were inside the vehicle. ■
In rebuttal, the State called Colonel Timothy Scanlan, an expert in the field of firearms and toolmark examination and crime scene reconstruction, who testified regarding the flaws in Mr. Hueske’s analysis. In Colonel Scanlan’s opinion, the photographs submitted to Mr. Hueske for use in formulating his opinion could not have been properly used for the analysis of trajectory angles. Colonel Scanlan also stated that Mr. Hueske had erroneously assumed that the roadway where the shooting occurred was flat. Colonel Scan-lan further testified j7that based on an ejection pattern test, the shooter was more likely seated in the driver’s seat.
Defendant was indicted by a Jefferson Parish Grand Jury with one count of second degree murder in violation of La. R.S. 14:30.1 and two counts of assault by drive-by shooting in violation of La. R.S. 14:37.1. On April 11, 2013, defendant was found guilty as charged on all three counts after *451 a twelve-person jury trial. On May 15, 2013, defendant filed motions for a new trial and post-verdict judgment of acquittal. After denying both of defendant’s post-verdict motions, the trial court sentenced defendant to a term of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on the second degree murder count, and to five-year sentences on each count of assault by drive-by shooting. On May 17, 2013, defendant filed a motion for appeal, which was granted by the trial court on May 20, 2013. The instant appeal follows.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant argues that the trial court erred in denying his challenge for cause in reference to prospective juror George Lozano. During jury selection, Mr. Lozano disclosed that his brother-in-law had been murdered in a drive-by shooting five years prior. After further questioning by the court, Mr. Lozano stated that he could still render a fair and impartial verdict. Defendant maintains that the denial of his challenge for cause should result in a reversal of his conviction. In response, the State argues that this issue was not preserved for appellate review because defense counsel’s objection was lodged before the trial court’s decision overruling the challenge for cause. The State further argues, in the event this Court finds the issue was preserved, Mr. Lozano’s comments indicate that he would be able to render an impartial verdict according to the law and evidence.
lain the instant case, defendant was tried on charges of second degree murder and assault by drive-by shooting. Second degree murder is an offense necessarily punishable by imprisonment at hard labor. Therefore, defendant had twelve peremptory challenges. La. R.S. 14:30.1; La. C.Cr.P. art. 799. The record reflects that defendant exhausted all twelve of his peremptory challenges and used one of them curatively to remove Mr. Lozano.
During jury selection in the present case, the court asked the potential jurors a series of general questions. Specifically, the venire was asked whether they had any family members who were victims of a violent crime. Prospective juror Lozano responded: “[m]y brother-in-law was murdered in a drive-by shooting. He was a police officer outside of this country.” The State and defense counsel were then permitted to ask follow-up questions regarding the prospective jurors’ answers. When the State asked whether Mr. Lozano could “judge the facts of this case separately” and “render a verdict based on whether ... the State has proven the charges,” Mr. Lozano responded, “I think I can.” • However, when defense counsel brought up the possibility of the trial bringing back unpleasant memories for Mr. Lozano, the following exchange took place:
THE DEFENSE: You kind of hinted, like, it may be a problem with having, I guess, the murder that occurred in your family so close in time.
MR. LOZANO: Uh-huh, uh-huh.
THE DEFENSE: So it could possibly make you flashback and possibly not pay attention to what’s going on because you’re thinking about replaying that movie in your head, which is a terrible thing to have to do.
MR. LOZANO: Yes.
THE DEFENSE: So, if that were the ease, that really, would you think that would make you an adequate juror or a not so good juror in this type of case?
MR. LOZANO: Not so good at this time.
*452 IsTHE DEFENSE: So, really they’re taking a risk that you might miss something important?
MR. LOZANO: Yes.
Defense counsel subsequently sought to challenge Mr. Lozano for cause on the stated ground that “Mr. Lozano has indicated that he would, with possibility he could have a problem listening to the evidence, with having that death in his family ...” In response, the trial court stated: “[t]he only thing he said that caused me any concern was when he agreed with your statement that he was, you’re actually taking a risk, that he might miss something important.” Mr. Lozano was then questioned at the bench:
THE COURT: I just want to clarify a couple of your answers. Okay? First of all, you understand that, at some point, if you’re selected as a juror, the judge is going to charge you as to what the law is to be followed in this particular case. You understand?
MR. LOZANO: Sure.
THE COURT: One of the oaths that you would take as a juror is to follow that law. Do you understand that?
MR. LOZANO: That’s correct.
THE COURT: Do you feel that you would be able to do that, sir? Would you be able to apply the law as given to you in this particular case?
MR. LOZANO: Yes.
THE COURT: And would you agree that you would have to follow that law and would follow that law?
MR. LOZANO: Yes.
THE COURT: Do you understand that ' the State has to prove their case beyond a reasonable doubt?
MR. LOZANO: Yes.
THE COURT: You understand that. And you would agree that you would hold them to that burden?
MR. LOZANO: Uh-huh.
|inTHE COURT: The question is this— You have mentioned that murder of your brother-in-law about five years ago. I understand that’s a fairly fresh wound. Is that going to prevent you from doing what you and I just discussed, following the law and holding the State to prove their case beyond a reasonable doubt? MR. LOZANO: No, it won’t affect that. THE COURT: And you think you can be a fair and impartial juror?
MR. LOZANO: Yes.
The trial court then denied defendant’s challenge for cause finding as follows:
I think the issue was the murder of the brother-in-law. I think that the fact that issue was raised, at least as far as the Court was concerned as to why there might be a challenge for cause. I think based on his response and now, in fact, that he specifically said that he will be able to be a fair and impartial juror in spite of the fact that his brother-in-law was murdered five years ago and the fact that he would follow the law, I’m going to deny the challenge for cause.
Defendant argues the trial court erred in denying his challenge for cause exercised to remove Mr. Lozano because of his statements regarding the murder of his brother-in-law in a drive-by shooting. Louisiana Code of Criminal Procedure article 797(2) provides that the State or the defendant may challenge a juror for cause on the ground that, inter alia, the juror is not impartial, whatever the cause of his partiality. “[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied.” State v. Jun *453 iors, 03-2425, p. 9 (La.6/29/05), 915 So.2d 291, 305, cert, denied, 547 U.S. 1115, 126 S.Ct. 1940,164 L.Ed.2d. 669 (2006).
A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Campbell, 06-0286, p. 73 (La. 15/21/08),! ¶ 983 So.2d 810, 858, cert, denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008); State v. Leger, 05-0011, p. 66 (La.7/10/06), 936 So.2d 108, 155, cert, denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). Only where it appears, upon review of the voir dire examination as a whole, that the trial court’s exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will an appellate court reverse that ruling. State v. Lee, 93-2810, p. 9 (La.5/23/94), 637 So.2d 102, 108; State v. Passman, 345 So.2d 874, 880 (La.1977).
The Sixth Amendment to the United States Constitution guarantees the accused the right to trial by an impartial jury. State v. Munson, 12-327 (La.App. 5 Cir. 4/10/13), 115 So.3d 6, 12, writ denied, 13-1083 (La.11/22/13), 126 So.3d 476. Further, La. Const. Art. I, § 17 guarantees the accused the right to full voir dire examination of prospective jurors and the right to peremptory challenges of those jurors. Louisiana Code of Criminal Proee-dure article 797 sets forth the grounds for which a juror may be challenged for cause.[2] When a defendant uses all of his peremptory challenges, a trial court’s erroneous ruling on a challenge for cause that results in the deprivation of peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. See State v. Bourque, 622 So.2d 198, 225 (La.1993), overruled on other grounds by State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d |1216, cert, denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998). Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and a defendant has exhausted his peremptory challenges. State v. Robertson, 92-2660, p. 3 (La.1/14/94), 630 So.2d 1278, 1280; State v. Ross, 623 So.2d 643, 644 (La.1993). Therefore, on appeal, to prove an error warranting reversal of both the conviction and sentence, a defendant must show that he exhausted all of his peremptory challenges and that the trial court erroneously denied a challenge for cause. State v. Mickel, 07-47, p. 8 (La.App. 5 Cir. 5/29/07), 961 So.2d 516, 522, writ denied, 07-1422 (La.1/7/08), 973 So.2d 732. In Louisiana, a defendant must also use one of his peremptory challenges curatively to remove the juror or waive any complaint on appeal. State v. Blank, 04-0204, p. 25 (La.4/11/07), 955 So.2d 90, *454 113, cert, denied, 552 U.S. 994, 128 S.Ct. 494,169 L.Ed.2d 346 (2007) (citing State v. Connolly, 96-1680, p. 8 (La.7/1/97), 700 So.2d 810, 818; Bourque, 622 So.2d at 229-30; State v. Fallon, 290 So.2d 273, 282 (La.1974)).
Based on the record as a whole, the trial court’s denial of the defense’s challenge for cause with regard to Mr. Lozano was not an abuse of discretion. First, the grounds stated by defense counsel justifying his challenge for cause are not supported by the Code of Criminal Procedure. Defense counsel’s reason for seeking to remove Mr. Lozano was due to the possibility that Mr. Lozano “could have a problem listening to the evidence, with having that death in his family.” However, the fact that a juror may have painful memories associated with the subject of a criminal trial is not listed as a basis for a challenge for cause under La.C.Cr.P. art. 797. Even assuming that defense counsel sought to challenge defendant for cause under La.C.Cr.P. art. 797(2) or (4), namely, that Mr. Lozano could not be impartial, or that he could not accept the law as given to him by the 11scourt, Mr. Lozano’s responses as a whole did not reveal facts from which bias, prejudice, or an inability to render judgment according to the law might be reasonably implied.
A prospective juror in a criminal trial is not automatically rendered incompetent to serve because a relative was a crime victim. See State v. Thom, 615 So.2d 355 (La.App. 5 Cir.1993). This is true even when the crime is similar to the one of which the defendant stands charged. Thom, supra; State v. Richardson, 33,272 (La.App. 2 Cir. 11/1/00), 779 So.2d 771, writ denied, 00-3295 (La.10/26/01), 799 So.2d 1151. The pertinent inquiry is whether the prospective juror can put aside the experiences of relatives and be fair and impartial to the State and the defendant. State v. Collins, 359 So.2d 174, 177 (La.1978); Thom, supra; State v. Eskano, 00-101, p. 11 (La.App. 5 Cir. 1/30/01), 779 So.2d 148, 153-54; State v. Burton, 09-0826, pp. 8-9 (La.App. 4 Cir. 7/14/10), 43 So.3d 1073, 1079, writ denied, 10-1906 (La.2/11/11), 56 So.3d 999.
In Louisiana, appellate courts have consistently upheld thé denial of challenges for cause of prospective jurors whose relatives have been crime victims when the juror states that they would be fair and impartial in rendering a verdict. In State v. Thom, this Court upheld the denial of a challenge for cause in an aggravated rape trial where a prospective juror disclosed that her sister had been raped. Thom,, supra. Although the juror stated that her sister’s rape would make her “look at the facts more closely,” she further stated that she felt she could be impartial and fair. Id. at 360. This Court noted that despite her sister being the victim of a similar crime, her testimony as a whole revealed that she was “able and willing to be an impartial juror.” Id.
In State v. Chambers, 99-678, p. 6 (La.App. 3 Cir. 1/19/00), 758 So.2d 231, 235, unit denied, 00-0551 (La.9/22/00), 768 So.2d 600, a case in which the 114defendant was charged with drug possession and intent to distribute, the Third Circuit Court of Appeal held that the trial court acted within its discretion in refusing to dismiss for cause a prospective juror whose sister had died of a drug overdose seven years earlier. The Third Circuit upheld the trial court’s ruling even though the juror stated that he was “afraid” his sister’s experience would have an influence on him and that he “seriously doubted he could put it out of his mind even if told by the court it was his duty to do so.” However, the juror later stated that he would apply the law as instructed by the trial judge and could be fair to the defendant. In this case, as in Chambers, the fact that a prospective ju *455 ror’s family member was the victim of a crime similar to those allegedly committed by defendant is not determinative of whether a challenge for cause was appropriate. (See also State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, rehearing denied, cert, denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997), where the Louisiana Supreme Court held that the trial court’s refusal to grant the defendant’s challenge for cause of a prospective juror whose grandfather was murdered during an armed robbery was not an abuse of discretion in a capital murder prosecution for a murder committed during the course of an armed robbery where the prospective juror indicated that he harbored no bias against the defendant based on the murder of his grandfather.)
As previously noted, the trial judge is vested with broad discretion in ruling on challenges for cause. Ross, supra. A trial judge’s ruling on a challenge for cause will only be reversed when a review of the entire voir dire reveals that the judge’s exercise of discretion was arbitrary and unreasonable with resultant prejudice to the accused. See State v. Labostrie, 358 So.2d 1243, 1247 (La.1978). The trial judge has the significant advantage of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to | ^questioning by the parties’ attorneys, which are not readily apparent at the appellate level where a review is based on a cold record. State v. Lee, 93-2810, p. 9 (La.5/23/94), 637 So.2d 102, 108. Here, Mr. Lozano’s voir dire testimony as a whole demonstrates his willingness and ability to be a fair and impartial juror. Nothing in the record suggests that Mr. Lozano’s experience concerning his brother-in-law as a .crime victim would bias him or that he would be unable to apply the law as given. Moreover, the rehabilitation of Mr. Lozano appears sufficient to overcome any alleged impartiality elicited by defense counsel during his questioning of Mr. Lozano. As noted by the trial court, Mr. Lozano stated that he would be able to be a fair and impartial juror in spite of the fact that his brother-in-law was murdered five years prior, and that he could apply the law as given by the trial judge. Mr. Lozano did not in any way admit partiality. Moreover, after having the opportunity to view Mr. Lozano during his voir dire questioning, the trial court determined that Mr. Lozano could be a fair and impartial juror. Under these circumstances, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that the trial judge erred in precluding him from presenting evidence concerning a taped jail conversation he had with his mother prior to trial to rebut the presumption that his identification of Kemon as the shooter was a recent fabrication. He contends that the conversation would have established that he had asked his mother to speak to Kemon about going to the District Attorney’s Office. He asserts that the recorded conversation is not hearsay because it was being introduced to rebut the State’s implied charge of recent fabrication. He maintains that the trial court’s ruling violated his constitutional right to present a defense and that the error cannot be found to be harmless. In response, the State argues that the trial court did not err in excluding 116the recorded jail conversation. However, assuming the trial court’s ruling was in error, the State submits that any error was harmless and did not influence the verdict. The State maintains that it presented overwhelming evidence of defendant’s guilt as detailed by the testimony of the witnesses who identified defendant as the shooter.
*456 At trial, defendant sought to introduce a taped phone conversation he had with his mother, Denise Butler, while incarcerated on July 26, 2012, which he contended established that he had asked his mother when Kemon was going to go to the District Attorney’s office and accept responsibility for the shooting. The trial court noted that the only applicable hearsay exception under which the recorded conversation would be admissible was if it was intended to rebut an allegation made by the State that defendant’s third statement given to the police a week prior to trial, in which he proclaimed his innocence and identified Kemon as the shooter, was a recent fabrication. The trial court listened to the taped conversation which revealed the following discussion between defendant and his mother:[3]
DEFENDANT: You talked to the District Attorney?
MS. BUTLER: No, no, no. Let me tell you, we got good news ... I got on the phone with the detective. You know I’m not supposed to be talking to him, alright?
DEFENDANT: Yeah.
MS. BUTLER: But I’m talking to him and basically what he said is they’re holding you because he said of what the witnesses are saying.
DEFENDANT: Yeah.
MS. BUTLER: He’s not saying that it’s not enough, he needs to get Kemon and Ari [sic] in and get their side of the story, okay?
DEFENDANT: Yeah.
|17MS. BUTLER: Once he gets they [sic] side of the story, he’s saying you have to- once you go up to the_, of commissioners ... when you go up against them take the public defender that they are assigning to you, okay? DEFENDANT: Uh-huh.
MS. BUTLER: The reason I’m saying to take it is because chances are they’re gonna let you go if Kemon talks. DEFENDANT: Huh? They gonna what?
MS. BUTLER: If Kemon don’t talk ... I said chances are they will let you go if Kemon talks. If Kemon don’t talk, hear what I’m saying, they gonna try to put you with second degree. Okay?
DEFENDANT: Uh-huh. So if Kemon talk they gonna drop the charges?
MS. BUTLER: Right. And you can come home.
DEFENDANT: .So ... But ... why ... how is that even ... Okay, I-I’m listening to you. I’m believing you.
MS. BUTLER: The next thing is ... if what the witnesses saying, and I don’t you say anything Dwayne. I love you and I don’t believe you done all that. I do love you.
DEFENDANT: I know ma. I—
MS. BUTLER: He’s gonna come and get you and he’s gonna talk with you. Talk totalk the way you know you supposed to talk. So you can get the release.
DEFENDANT: Okay, so, ... stop talking about this over the phone. We can talk about this when you come Wednesday.
After listening to the recording, the trial court denied defendant’s request to admit the taped phone conversation. In rendering its ruling, the trial court found that, “at no point in that recording did the Court hear Mr. Magee say the essential element *457 of what you’re trying to show was that the other party, if you will, Mr. Kemon had, in fact, been the shooter in the case.” As a result, the trial court found that the recorded statement did not fall under the hearsay exception defined in Louisiana Code of Evidence art. 801(D)(1)(b). Defense counsel noted an objection to the court’s ruling and proffered the subject phone conversation.
|1ROn appeal, defendant argues that the taped conversation, during which he claims he asked his mother “to get Kemon Magee to talk to the Assistant District Attorney so he could go free and her conversations with him denying responsibility for the shooting,” went to the core of his defense. Thus, defendant asserts the trial court’s ruling impeded his ability to demonstrate to the jury that the statement he gave a week prior to trial, in addition to his trial testimony, in which he identified Kemon Magee as the shooter, were not recent fabrications.
Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. State v. Lirette, 11-1167, p. 19 (La.App. 5 Cir. 6/28/12), 102 So.3d 801, 813, writ denied, 12-1694 (La.2/22/13), 108 So.3d 763. This right does not require a trial court to permit the introduction of evidence that is inadmissible, irrelevant, or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. Id. The trial court is accorded great discretion in evidentiary rulings and, absent a clear abuse of that discretion, rulings on admissibility of evidence will not be disturbed on appeal. A trial judge’s determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Sandoval, 02-230 (La.App. 5 Cir. 2/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La.10/3/03), 855 So.2d 308.
Hearsay is defined as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801(C). La. C.E. art. 801(D)(1)(b) provides that a statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is Inconsistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.
For a statement to qualify as an exemption from the hearsay rule under La. C.E. art. 801(D)(1)(b), it is necessary for the witness’s statement to have been “attacked as a recent fabrication or claimed to have been prompted by an improper influence or motive.” State v. Joyner, 11-1397 (La.App. 4 Cir. 10/24/12), 107 So.3d 675, writ denied, 12-2494 (La.5/31/13), 118 So.3d 388 (citing George Pugh, Robert Force, Gerard Rault & Kerry Triche, HANDBOOK ON LOUISIANA EVIDENCE LAW, Authors’ Note (3), La. C.E. art. 801, p. 632 (2011)). “[T]here must have been an express or implied charge that the witness is now lying (‘fabrication’) and not just in error.” Id. at p. 633 (citing Weinstein & Berger, WEINSTEIN’S EVIDENCE, ¶ 801-185 et seq.)
At trial, the State elicited testimony from Detective Vasquez and defendant which implied that defendant’s third statement, in which he implicated Kemon Ma-gee as the shooter, was a recent fabrication. However, the trial court correctly found that the recorded conversation did not rebut the State’s allegation that defendant fabricated the allegations against Kemon Magee.
*458 During the phone conversation, defendant’s mother is heard telling defendant that a detective had told her that if Kemon Magee implicated himself in the shooting, defendant would be released. At no point during the conversation did defendant proclaim his innocence or identify Kemon Ma-gee as the shooter. At trial, defense counsel admitted that the court would have to infer the intent behind the conversation. The substance of the recorded conversation is dissimilar to defendant’s trial testimony, as well as his third statement given a week prior to trial, and therefore, the trial court did not abuse his discretion in denying its | ^admission and finding that it did not fit within the hearsay exception set forth under La. C.E. art. 801(D)(1)(b).
Further, even assuming that the trial court erred in refusing to admit any such evidence, it appears that it constituted harmless error insofar as defendant being deprived of his right to present a defense. See Juniors, 03-2425 at 55, 915 So.2d at 382. An error is harmless when the guilty verdict is not attributable to the error. State v. Vallo, 13-1369 (La.1/10/14), 131 So.3d 835; State v. Jackson, 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, 914, writ denied, 05-1740 (La.2/10/06), 924 So.2d 162. At trial, the passengers of both defendant’s and the victim’s vehicles testified that defendant was the shooter. The occupants of the victim’s vehicle also identified defendant from a photographic lineup during interviews conducted after the incident. Additionally, eyewitness -Palmer testified that while passing defendant’s vehicle, she observed defendant, whom she later identified from a photographic lineup, leaning forward and looking in the direction of the passenger side of his vehicle when the gunshots were fired. Subsequent to the shooting, defendant was apprehended and found to be in possession of the handgun that matched the fired cartridge casings and fired projectiles recovered from the scene. Furthermore, Ms. Butler’s emotional attachment to her son provided her with a strong motive to believe her son’s claims of innocence despite the large volume of evidence to the contrary. Given the substantial evidence of defendant’s guilt, the jury’s verdict was surely not attributable to any alleged error in denying defendant’s request to admit the jail phone conversation in an attempt to rebut a presumption of recent fabrication.
Moreover, defendant was not hindered from presenting his defense at trial despite the trial court’s denial of his request to introduce the taped conversation. At trial, defendant’s third statement was played for the jury. His third statement |21was consistent with his trial testimony during which he proclaimed his innocence and identified his cousin, Kemon Magee, as the shooter. At trial, he further testified that he spoke to his mother while in jail about contacting Kemon Magee to clear his name. Therefore, although the recorded conversation itself was not admitted, the jury was still presented with the substance of the conversation through defendant’s testimony. Despite being presented with this evidence, the jury rejected defendant’s theory that Kemon Magee was the shooter. Accordingly, any error in precluding defendant’s admission of the subject jail conversation was harmless beyond a reasonable doubt. For the foregoing reasons, this assignment of error is without merit.
A review of the record reveals no errors patent.

CONCLUSION

Accordingly, we affirm defendant’s convictions and sentences.

AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

. Louisiana Code of Criminal Procedure article 797 provides that either party may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

. It is noted that the recorded phone conversation was not transcribed. Due to the quality of the recording, portions of the conversation are indecipherable and therefore left blank.