CHAISSON, J.
| defendant, Damion Savage, appeals his convictions and sentences for six counts of armed robbery with a firearm. We have reviewed the arguments presented in ap-. pellate counsel’s brief and defendant’s pro se supplemental brief and find them to be without merit. Accordingly, we affirm defendant’s convictions and sentences.
PROCEDURAL HISTORY
On May 18, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant[1] with six counts of armed robbery, in violation of La. R.S. 14:64. Defendant pled not guilty, and. the case proceeded to trial before a twelve-person jury on February 16-19, 2016. After considering the evidence presented, the jury found defendant guilty as charged on all six counts. On February 25, 2016, the trial court sentenced defendant on each count to fifty-five years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Further, pursuant to La, R.S. 14:64.3, the trial court sentenced defendant on each count to an additional five years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The trial court ordered that the five-year enhancement on each count be served consecutively to the fifty-five-year sentence on each count and *717 further ordered that the six sentences be served concurrently with each other. Defendant now appeals.
FACTS
This case stems from a series of six armed robberies that occurred at Jefferson Parish businesses over the course of approximately two months. The details of each are as follows:

|¾January 23, 2011—Armed Robbery of Heather Carmadelle at Subway on Bara-taría Boulevard (Count Six)

On January 23, 2011, sometime between 8:00 and 9:00 p.m., Jayeshkumar Patel,[2] manager at the Subway restaurant on Bar-ataría Boulevard in Marrero, and Heather Carmadelle, an employee, were getting ready to close for the day. Mr, Patel was in the restroom, and Ms. Carmadelle was washing dishes in the back of the store when two men, one of whom had a gun, came into the restaurant. The armed perpetrator told Ms. Carmadelle to unlock the safe. When Ms, Carmadelle replied that she did not have a key to the safe, they ordered her to open the register and lie down on the floor. The two men took the money from the cash register and left. Ms. Carmadelle testified that she was unable to see the faces of the men because they were covered, but that the robbery was recorded by a surveillance camera.

March 6,2011—Armed Robbery of Ashley Arthur and Jayeshkumar Patel at Subway on Barataría Boulevard (Counts One and Two)

•On March 6, 2011, the Subway on Bara-taría Boulevard was robbed for a second time while Mr. Patel and another employee, Ashley Arthur,[3] were working. On that occasion, two black men, armed with guns, entered the business. According to Mr. Patel, one of the robbers demanded that he open the register or he would kill him. The men then took Ms. Arthur’s purse as well as money from Mr. Patel’s pocket and the cash register. During the course of their investigation, the,officers discovered a Newport brand cigarette butt outside of the restaurant. Subsequent DNA analysis revealed that the cigarette butt was consistent with the DNA profile obtained from the reference sample of co-defendant Isaac.
I ^Surveillance footage of the robbery was obtained. After viewing the surveillance videos from the two Subway incidents, Detective Wayne Rumore of the Jefferson Parish Sheriffs Office believed the two robberies were committed by the same suspects, based on the similarities between the two incidents. Detective Rumore explained, ‘‘two men entered the business fully masked, fully covered, both armed with semi automatic pistols, and there was basically a takeover robbery where they took over the entire business.”

March 13, 2011—Armed robbery of Adrian Labeaud and Dana Rhea at. Subway on Jefferson Highway (Counts Three and Four)

On March 13, 2011, Dana Rhea and Adrian Labeaud were working at a Subway on Jefferson Highway when two armed men entered the restaurant from the back door. One of the perpetrators ordered Ms. Rhea to crawl on the floor to the cash register where she then opened the register and gave the man the cash. While Ms. Rhea was at the cash register, the second assailant put a gun to Mr. Labeaud’s side and instructed him to keep his face down towards the ground. After learning, the whereabouts of the safe from Mr. La-beaud, the men also removed money from *718 the safe before instructing Ms. Rhea and Mr. Labeaud to crawl to the back of the store and wait there.
Deputy Richard Uyeda of the Jefferson Parish Sheriffs Office responded to the armed robbery at the Subway on Jefferson Highway, spoke to the victims, and obtained descriptions of the perpetrators. Additionally, as in the March 6, 2011 robbery, a Newport brand cigarette butt was discovered outside of the restaurant. Subsequent DNA analysis revealed that the cigarette butt was consistent with the DNA profile obtained from the reference sample of co-defendant Isaac. The police also obtained surveillance footage of the robbery, which depicted similarities to the March 6, 2011 robbery.
| March 24, 2011—Armed Robbery of Nicholas Ramsak at GameStop on Belle Promenade (Count Five)
On the evening of March 24, 2011, Nicholas Ramsak was working at the GameS-top in Marrero when he was robbed at gunpoint. Mr. Ramsak testified that two men, one of whom was armed with a gun, entered the store, demanded the money from both cash registers, took the cash, ordered him to his knees, and then fled. Mr. Ramsak was unable to see the assailants’ faces because they were covered, but he did provide a clothing description of one of the men. Fingerprints taken from a video gaming accessory cabinet located behind the counter and inaccessible to the public matched co-defendant Isaac’s fingerprints.
Detective Rumore thereafter obtained an arrest warrant for Isaac and a search warrant for his residence. Isaac was arrested and a pack of Newport brand cigarettes was recovered at the location of his arrest. Additionally, a search of Isaac’s residence revealed clothing that matched the description of the clothing worn by one of the suspects from several of the robberies.
Isaac’s cellular phone was also seized, and information obtained from Isaac’s phone records indicated that a phone number registered to defendant’s wife, Monique Savage, was contacted frequently around the times of the robberies. Moreover, cell phone tower information obtained from Isaac’s and Savage’s cell phone records placed both phones near the location of the robberies at the times they occurred. Detective Rumore obtained an arrest warrant for defendant and a search warrant for his residence. The officers thereafter went to defendant’s residence and executed both warrants. Various articles of clothing, including a Polo cap, a Polo jacket, a White Sox cap, white Nike tennis shoes, and t-shirts similar to those worn by the perpetrators in the surveillance videos, were among items seized as a result of the search of defendant’s residence and car.[4]
[ ^Following defendant’s arrest pursuant to the warrant, he was transported to the investigations bureau to be interviewed. After being advised of his rights, defendant gave a series of three statements, in which he admitted to committing the armed robberies after being confronted with the clothing seized and the surveillance videos from the robberies.
Defendant testified at trial and denied his involvement in the robberies. He testified that when he was taken in for questioning he denied any involvement in the robberies. However, during the course of his interrogation, Lieutenant Russo became aggressive and threatened to contact defendant’s wife’s employer to inform him of a pending drug charge. According to defendant, things began to “escalate” be *719 tween him and Lieutenant Russo, and at some point, Lieutenant Russo grabbed his clothing to “rough [him] around a little bit.” Defendant maintained that his statements are not true, that he was threatened into giving them, and that the only reason he admitted to the robberies was to protect his family.[5] At trial, defendant also testified that during his interview at the investigations bureau, he began to experience heroin withdrawals.
DENIAL OF JUROR CHALLENGE

(Assignment of Error Number One)

In his counseled assignment of error, defendant argues that the trial court erred in denying his challenge for cause as to prospective juror Marshall Breedlove. Specifically, defendant contends that Mr. Breedlove’s answers as a whole during voir dire established that he could not be a fair and impartial juror because Mr. Breed-love’s brother-in-law had been beaten and robbed at gunpoint, and this incident was “fresh on his mind.” Based on this error, defendant concludes that he was denied his right to a fair and impartial jury, and thus, his case should be remanded for a new trial.
UThe Sixth Amendment to the United States Constitution guarantees the accused the right to a trial by an impartial jury. Further, Article I, § 17 of the Louisiana Constitution guarantees the right to full voir dire examination of prospective jurors and the right to challenge those jurors peremptorily. State v. Munson, 12-327 (La.App. 5 Cir. 4/10/13), 115 So.3d 6, 12, writ denied, 13-1083 (La. 11/22/13), 126 So.3d 476. La. C.Cr.P. art. 797(2) allows the defendant or the State to challenge a juror for cause on the ground that he “is not impartial, whatever the cause of his. partiality.”
A prospective juror’s seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge’s refusal to excuse him on the ground that he is not impartial is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. A challenge for cause should be granted, however, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably implied. State v. Kang, 02-2812 (La. 10/21/03), 859 So.2d 649, 653.
In ruling on a challenge for cause, the trial judge is vested with broad discretion; his ruling will be reversed only when a review of the entire voir dire reveals that the judge’s exercise of discretion was arbitrary and unreasonable with resultant prejudice to the accused. This is necessarily so because the trial court has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning by the parties’ attorneys. Such expressions and intonations are not readily apparent at the appellate level where a review is based on a cold record. State v. Munson, 115 So.3d at 12.
To prove an error warranting reversal of both the conviction and sentence, a defendant must show that he has exhausted all of his peremptory challenges and |7that the trial court erroneously denied a challenge for cause. In Louisiana, a defendant must also use one of his per *720 emptory challenges curatively to remove the juror or waive any complaint on appeal. State v. Magee, 13-1018 (La.App. 5 Cir. 9/24/14), 150 So.3d 446, 453, writ denied, 14-2209 (La. 10/2/15), 178 So.3d 581. In the instant case, the record reflects that defendant exhausted all of his peremptory challenges and that he used a peremptory challenge to remove Mr. Breedlove.[6] Thus, the issue which remains is whether the trial court erroneously denied defendant’s challenge for cause of Mr. Breedlove.
During voir dire, Mr. Breedlove stated that he is married to a hair dresser and is a police recruiter with the New Orleans Police Department. When asked by the trial judge if he could be fair and impartial despite his work for the police department, Mr. Breedlove replied affirmatively. He further acknowledged that he could listen to the evidence presented, could render a verdict solely on the evidence in this case, and would not hold it against defendant if he chose not to testify.
Pursuant to further voir dire questioning, Mr. Breedlove revealed that a friend’s son was in prison for life and that a family member had been a victim of a crime. Mr. Breedlove advised the prosecutor that his brother-in-law had been “mugged and beaten” outside of his house, then taken back inside of his house where he and his wife were robbed at gunpoint. Noting that Mr. Breedlove was a police recruiter, that he knew someone in jail, and that a family member had been a victim of a crime, the State asked Mr. Breedlove whether he would be more partial to the police because of his experiences. Mr. Breedlove responded, “I would , think not. I would be as fair as I could. The NOPD, is integrity, fairness, and service. |sSo that’s what I hope I will be.” Defense counsel then followed-up on this line of questioning, asking all of the prospective jurors whether they had any personal experiences as a crime victim that when, listening to the testimony in this case, would “bring them back” to that moment. The following colloquy ensued:
MR. BREEDLOVE: Yes, sir. Again, going back to my brother-in-law, that was just last year it’s fresh on my mind. There is some resentment when it comes to armed robbery. But again, being a police recruiter I would want to be as fair as I could.
DEFENSE: And we all want to be as fair as we could, we all want to be good people and do nice things and live this ideal life, but sometimes that’s just not our reality, and it doesn’t mean that anything’s wrong with us, but we’re humans. That’s just how we’re wired. That’s what separates us from animals right. We have feelings, we can sympathize, we can empathize, we can do all of those things, and we just can’t at the drop of a dime shut those things off. Would you agree with that Mr. Breedlove?
*721 MR. BREEDLOVE: Yes.
DEFENSE: ... And that’s very fresh from what you’re saying in a year ... and when [the] State kind of begin [sic] asking you all those things it kind of came back to you also with your brother.
MR. BREEDLOVE: Yes.
DEFENSE:' So my question to you and you correct me if I’m wrong, but from what it sounds like this may not be the case for you. Would you agree with that?
MR. BREEDLOVE: I would agree. It may not be.
DEFENSE: Because again, if you were sitting where Mr. Savage was sitting and there was a juror sitting where you were, sitting and you had this dialogue would you want you on the jury?
MR. BREEDLOVE: Probably not.
DEFENSE: And of course, the Judge will instruct you on the law and tell you to be fair and to disregard this and | ^disregard certain things, and put your feelings aside, but again, sometimes you just can’t do that. And from what you’re saying Mr. Breed-love it sounds like that’s something you probably won’t be able to do if it came around to it, correct?
MR. BREEDLOVE: I would try.
DEFENSE: But again, this wouldn’t be the right case for you based on your feelings and your experience with your brother, correct?
MR. BREEDLOVE: Probably not.
Defense counsel challenged Mr. Breed-love for cause claiming that he “echoed resentment related to a- previous armed robbery.” A bench conference with Mr. Breedlove was called at which time- the trial judge asked Mr. Breedlove whether he could separate himself from his prior experience concerning his1 brother-in-law and judge the case solely on the evidence so as to render a fair and impartial verdict after applying the law as instructed. In response, the following exchange Occurred:
MR. BREEDLOVE: I would do my best to do that. 1
THE COURT: And do you think you can do that sir?
MR. BREEDLOVE: Yes.
THE COURT: To the best you can?
MR. BREEDLOVE: As best l ean.
The trial court found ■ Mr. Breedlove could be fair and denied defendant’s challenge for cause over defense counsel’s objection that Mr. Breedlove’s- prior experience regarding the armed robbery of his brother-in-law would affect his decision in this case. Defendant now contends that, the trial court erred in denying his challenge for cause as to Mr, Breedlove, whose responses clearly indicated he could not be a fair and impartial juror.. Specifically, defendant claims that Mr. Breedlove’s answers during -voir dire,' namely, that the recent robbery of his | ^brother-in-law was “fresh on his mind,” that -he harbored resentment regarding armed robberies because of the incident with his brother-in-law, that he would not want himself to be on the jury if he were: the defendant, and that he admitted this was not the right case for him, rendered him, without sufficient rehabilitation, incapable of “keeping *722 an open mind.” We find no merit to defendant’s arguments.
A prospective juror in a criminal trial is not automatically rendered incompetent to serve because a relative was a crime victim. This is true even when the crime is similar to the one with which the defendant stands charged. The pertinent inquiry focuses on whether the prospective juror states that he can put aside the experiences of relatives and be fair and impartial to the State and the defendant. State v. Magee, 150 So.3d at 454.
Louisiana courts have consistently upheld the denial of challenges for cause of prospective jurors whose relatives have been crime victims when the juror states that he or she would be fair and impartial in rendering a verdict. For example, this Court, in State v. Magee, supra at 454-55,, found no abuse of discretion in the trial court’s denial of a challenge for cause of a prospective juror whose brother-in-law had been the victim of crimes similar to those with which the defendant was charged. In the . Magee case, the defendant was charged with and convicted of one count of second degree murder and two counts of assault by drive-by shooting. The defendant appealed his conviction arguing that a prospective juror should have been excused for cause after he disclosed that his brother-in-law had been murdered in a drive-by shooting. The defendant noted that during voir dire the prospective juror acknowledged that he might have a problem listening to the evidence based on the death in his family and that he would not make a very good juror because of the type of case. The trial judge denied the defendant’s challenge for cause finding that he was rehabilitated and could be fair and impartial despite the fact that his brother-in-law had been murdered. This Court agreed, noting that Inthe prospective juror’s responses as a whole demonstrated his willingness and ability to be a fair and impartial juror. This Court further noted that the record contained no suggestion that the prospective juror’s experience with a crime victim would bias him or would affect his ability to apply the law as written. Lastly, this Court commented that the rehabilitation of the prospective juror appeared sufficient to overcome any alleged partiality elicited by the defense counsel during his questioning of the prospective juror.
Likewise, in State v. Mazique, 09-845 (La.App. 5 Cir. 4/27/10), 40 So.3d 224, writ denied, 10-1198 (La. 12/17/10), 51 So.3d 19, the defendant argued on appeal that the trial court erred by denying his challenge for cause as to a prospective juror who, in a case based on charges of aggravated incest and pornography involving juveniles, could not be impartial because her daughter had been sexually molested as a child. During voir dire, the prospective juror stated that she did not know whether her experience would affect her ability to sit on the jury but indicated that she had not formed an opinion as to the defendant’s guilt or innocence. When the prosecutor asked the prospective juror whether she could be fair and impartial to both sides, she responded, “I think I can ... It’s so hard.” Later when asked the same question, she stated, “I can. It will be hard, but I can.” Upon further questioning by defense counsel, the prospective juror indicated that the incident in her life was very traumatic and she was visibly shaken by it every time she thought about it. She also agreed that given the nature of the case, the incident would weigh heavily on her mind.
The defendant in Mazique challenged the prospective juror for cause on the basis that she was “visibly shaken and very emotional and upset by the whole thing.” The trial judge denied the challenge find *723 ing that she was rehabilitated and could be fair. On appeal, this Court noted that the prospective juror demonstrated a willingness and ability to decide the case impartially according to the evidence |12and further noted that the prospective juror’s responses as a whole did not reveal facts from which bias, prejudice, or inability to render a judgment according to law could be reasonably implied. Thus, this Court held the trial court did not abuse its discretion by denying the defendant’s challenge for cause.
Similarly, the prospective juror in this case demonstrated a willingness and ability to decide the case impartially according to the law and evidence, and his responses, as a whole, did not reveal facts from which bias, prejudice, or inability to render a judgment according to law could be reasonably implied. Moreover, we note the rehabilitation of the prospective juror appeared sufficient to overcome any alleged partiality elicited by defense counsel during his questioning of the prospective juror. We particularly note that after Mr. Breedlove indicated that this might not be the best case for him since his brother-in-law was the victim of an armed robbery, he thereafter declared his ability to separate himself from his prior experience concerning his brother-in-law and judge the case solely on the evidence so as to render a fair and impartial verdict after applying the law as instructed. Considering the foregoing, the trial court did not abuse its discretion in denying defendant’s challenge for cause as to Mr. Breedlove.[7]
DENIAL OF MOTION TO SUPPRESS STATEMENTS

(Pro Se Assignment of Error Number One)

In his first pro se assignment of error, defendant argues that the trial court erred in denying his motion to suppress statements. He specifically contends that his statements were not freely and voluntarily given but rather were the product of police threats and coercion. In particular, defendant contends that Detective Rumore and Lieutenant Russo threatened to inform his wife’s employer that she had a narcotics charge. Defendant also maintains that the time lapse between the | lsexecution of the waiver of rights form, which occurred at 11:19 p.m,, and his first statement, which began at 1:39 a.m., indicates police coercion.
In the present case, defendant filed a motion to suppress alleging generally that his statements had been “illegally and unlawfully obtained.” At the October 1, 2013 suppression hearing, Detective Rumore and Lieutenant Russo recounted the circumstances surrounding the taking of defendant’s statements. Detective Rumore testified that he presented defendant with a rights of arrestee form and went over each individual right with defendant. Defendant then initialed next to each right indicating he understood his rights and signed at the bottom of the form signifying that he read his rights and wished to waive them. Detective Rumore testified that he believed defendant understood his rights *724 when he executed the waiver of rights form.
Detective Rumore further testified that he was present for the statements given by-defendant on April 1, 2011, at 1:39 a.m. and' 2:05 a.m., and that neither he nor Lieutenant Russo used any force, coercion, intimidation, or promises in order to obtain the statements in which defendant confessed to the crimes. Detective Rumore acknowledged that defendant indicated during'his first statement that he had a drug problem; however, he maintained that defendant did not appear to be intoxicated or under the influence of narcotics at the time he executed the waiver of rights form. During his testimony, Detective Rumore addressed the time lapse between defendant’s signing of the waiver of rights form at 11:19 p.m. and the taking of defendant’s first statement at 1:39 a.m. and explained that this time lapse was due to a simultaneous search of defendant’s residence during which evidence was located and used in the interrogation.
Next, Lieutenant Russo testified that he participated in all three of the recorded statements made by defendant on April 1, 2011, at 1:39 a.m., 2:05 a.m., and 2:34 a.m. Lieutenant Rüsso confirmed that he alone took defendant’s third [urecorded statement and that at no point did defendant request to consult with an attorney. He further stated that he did not make promises of leniency, nor did he force, coerce, or intimidate defendant into providing statements. Further, Lieutenant Russo testified that defendant appeared to understand and communicated intelligently throughout the interviews. Lieutenant Russo likewise acknowledged that defendant indicated he was addicted to heroin; however, he did not ask defendant if he was on heroin at the time of the statements because defendant “was talking like a normal person. His reactions were- normal. There was nothing indicative of him being on drugs.”
At the conclusion of the testimony, defense counsel argued for the suppression of defendant’s statements on the ground that they were not knowingly and intelligently given. He argued that defendant’s heroin addiction impaired his ability to understand the questions asked and the consequences of his statements. In response, the State argued that the testimony of the officers established that defendant was not impaired when he provided his statements and that he was competent at the time of the interviews.
The trial court denied defendant’s motion to suppress statements, finding there was no testimony or evidence to suggest that defendant “did not understand the consequences, or understood the circumstances and consequences of his statements and/or information provided to the detectives.” The trial court further commented that defendant’s suggestion that “at the time that he gave the statements there were adverse affects .[sic] from, maybe, being on heroin, is nothing but speculation or conjecture.”
Defendant now challenges the trial court’s denial of his motion to suppress statements. In his pro se supplemental brief, defendant contends that his statements were not freely and voluntarily given but rather were the product of police threats and coercion. In particular, defendant contends that Detective |1fiRumore and Lieutenant Russo threatened to inform his wife’s employer that she had a narcotics charge and thus destroy her pharmaceutical career. Defendant also maintains that the time lapse between the execution of the waiver of rights form and his first statement indicates police coercion. Defendant did not advance these arguments about police coercion either in his written motion to suppress or at the sup *725 pression hearing. In addition, although defendant testified at trial regarding his statements, as well as the alleged coercion employed by the officers to obtain his statements, he did not object to the volun-tariness of his statements on this basis at trial.[8]
Articulating a new basis for the motion to suppress for the first time on appeal is prohibited under La. C.Cr.P. art. 841, since the trial court would not be afforded an opportunity to consider the merits of the particular claim. State v. Harris, 414 So.2d 325 (La. 1982). Louisiana courts have long held that.a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress. State v. Montejo, 06-1807 (La. 5/11/10), 40 So.3d 952, 967, cert. denied, 562 U.S. 1082, 131 S.Ct. 656, 178 L.Ed.2d 513 (2010); State v. Jackson, 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, writ denied, 05-1740 (La. 2/10/06), 924 So.2d 162. In the present case, since defendant did not present these specific arguments about police coercion either in his written motion to suppress or at the suppression hearing, he is now precluded from raising these new bases for suppression of his statements for the first time on appeal.[9]
| ^Nonetheless, we have reviewed the actual argument advanced by defendant at the suppression hearing that heroin addiction impaired his ability to understand the questions asked and the consequences of his statements, and we find no abuse of discretion in the trial court’s denial of defendant’s motion to suppress statements. Specifically, at the suppression hearing, the State presented the testimony of Detective Rumore and Lieutenant Russo that showed that defendant was advised of his rights prior to making his statements, that defendant initialed next to each right on the rights of arrestee form indicating he understood his rights, and that he signed the form signifying that he read his- rights and that he wished to waive them. In addition, Detective Rumore and Lieutenant Russo testified that they did .not make any promises to defendant, nor use any force, coercion, or intimidation in order to obtain the statements. During their testimony at the suppression hearing, the officers acknowledged that defendant indicated during his first statement that he had a drug problem; however, they maintained, that defendant did not act like.he was.intoxicated.or under the influence of narcotics and that he appeared to understand and communicated intelligently throughout the interviews.[10]
After considering the testimony at the suppression hearing, as well as defen *726 dant’s argument that his heroin addiction affected the voluntariness of his statements, the trial court denied defendant’s motion to suppress finding that there was no testimony or evidence to suggest that defendant “did not understand the consequences, or understood the circumstances and consequences of his statements and/or information provided to the detectives.” A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. The admissibility of a confession or statement is a determination for the trial judge and the judge’s conclusions on the credibility and 117weight of the testimony relating to the voluntariness of a confession or statement are entitled to great weight and will not be overturned on appeal unless unsupported by the evidence. State v. Arias-Chavarria, 10-116 (La.App. 5 Cir. 9/28/10), 49 So.3d 426, 433, writ denied, 10-2432 (La. 2/25/11), 58 So.3d 460. In the present case, the trial court’s conclusions regarding the voluntariness of defendant’s statements are supported by the evidence. Accordingly, we find no error in the trial court’s denial of defendant’s motion to suppress statements.
DENIAL OF MOTION TO SUPPRESS EXIGENT CIRCUMSTANCES FORM

(Pro Se Assignment of Error Number Two)

In his second pro se assignment of error, defendant argues that the exigent circumstances form used by police to obtain co-defendant Isaac’s telephone records, from which defendant’s phone number was gained, violated the warrant requirement of the Fourth Amendment to the United States Constitution through circumvention. He contends that with the form, Lieutenant Russo alone was able to determine that exigent circumstances existed to allow him access to phone records without independent judicial consideration of the evidence. Accordingly, defendant concludes that the trial court’s failure to exclude the phone records that Lieutenant Russo obtained via the exigent circumstances form should justify reversal of his conviction because the records were used to link defendant to Isaac and to pinpoint defendant’s location at the time of the armed robberies.
The facts adduced at the suppression hearing, as well as at trial, establish that after determining Isaac’s identity from fingerprints located at the scene of one of the robberies, a search warrant for Isaac’s residence was obtained and executed. While at Isaac’s residence, Isaac’s girlfriend provided Detective Rumore with Isaac’s cell phone number. With this information, Lieutenant Russo then executed an exigent circumstances request form addressed to Sprint/Nextel, seeking Isaac’s subscriber information, call detail records, cell site information, precision location 11sof the mobile device (GPS), and any text messages available. Sprint/Nextel provided the requested information to the sheriffs office, which included a call detail log based on cell phone use between March 18, 2011, and March 25, 2011. From this -log, it was discovered that telephone number (504) 701-XXXX had contacted Isaac around the time of the robberies. Accordingly, Detective Rumore obtained a court order for the cell phone records associated with cell phone number (504) 701-XXXX. Through investigation, the officers ultimately discovered that the cell phone belonged to defendant, and upon analysis of the records, the officers believed defendant to be connected to Isaac and the armed robberies.[11]
*727 Isaac filed a motion to suppress the evidence, which was heard simultaneously with defendant’s motion to suppress statements. During the hearing, Lieutenant Russo explained the necessity to obtain Isaac’s cell phone records via an exigent circumstances request, which requires the officer to declare an exigent situation involving: a) immediate danger of death or serious bodily injury to any person; b) conspiratorial activities characteristic of organized crime; or c) an immediate threat to a national security interest. He testified:
We have Heroin addicts running around Jefferson Parish robbing businesses that are occupied by civilians. Placing them on the ground face down with a gun to the back of their head. We felt that it was a matter of time before a gun could of [sic] accidently discharged, or one of the victims didn’t cooperate, and could become a victim of a homicide. So, we felt there was an immediate threat to one of the citizens [sic] lives in this parish.
He further testified that he received additional information that Isaac “might become violent toward police and flee the area.” At the conclusion of the hearing, Isaac’s counsel moved to suppress the evidence obtained as a result of the exigent circumstances request form, arguing that the form contained false information provided by Lieutenant Russo regarding the exigent circumstances which allowed for the warrantless search of his cell phone information. The court denied Isaac’s 119motion to suppress evidence, finding there existed exigent circumstances, and that the information provided by Lieutenant Russo regarding the exigency of the situation appeared credible.
First, it is noted that the exigent circumstances request form referenced by defendant on appeal did not pertain to his cell phone records. Rather, the exigent circumstances form executed by Lieutenant Russo requested subscriber information from Sprint/Nextel pertaining to Isaac’s cell phone. Based on Isaac’s cell phone records obtained pursuant to this request, a court order was then signed by Commissioner Carol Kiff of the Twenty-Fourth Judicial District Court, Parish of Jefferson, ordering an authorized representative of Sprint/Nextel to relinquish subscriber information for defendant’s cell phone, including call record logs and cell site information. Thus, defendant’s cell phone records were validly obtained via court order issued by a neutral magistrate.
Nevertheless, since defendant was adversely affected by the warrantless search of Isaac’s cell phone records, he has standing to challenge the legality of the alleged unconstitutional seizure of Isaac’s cell phone records. La. Const. Art. I, § 5; State v. Jackson, 09-1983 (La. 7/6/10), 42 So.3d 368, 371-72.
Defendant argues that the exigent circumstances form violated the warrant requirement of the Fourth Amendment to the United States Constitution, allowing Isaac’s phone records to be obtained without independent judicial consideration of the evidence. He asserts that the trial court’s failure to exclude Isaac’s phone records was detrimental to his case because the information contained in the records was used to link him to Isaac and the crimes committed.
The Fourth Amendment to the United States Constitution and Article I, *728 § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. War-rantless seizures are per se unreasonable unless they can be justified under one of the narrowly drawn exceptions to the Fourth Amendment’s warrant requirement. State v. Bone, 12-34 (La.App. 5 Cir. 9/11/12), 107 So.3d 49, writ denied, 12-2229 (La. 4/1/13), 110 So.3d 574.
However, a defendant only has standing to challenge an infringement on his Fourth Amendment right when he is able to claim a justifiable, reasonable, or legitimate expectation of privacy in the item seized. Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). To determine if a defendant has a reasonable expectation of privacy, a court must not only consider whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. Ragsdale, 381 So.2d 492, 497 (La. 1980); State v. Bone, 107 So.3d at 63.
The United States Supreme Court has consistently held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties because any reasonable expectation of privacy is destroyed when the risk of disclosure is assumed. Smith, 442 U.S. at 743-44, 99 S.Ct. at 2582. However, the Supreme Court has also recognized a “content exception” which draws a distinction between the content of a communication and the data log stored by a third party associated with such communication. See Smith, supra (discussing the distinction between the contents of a telephone call for which a legitimate expectation of privacy exists and the listing of actual phone numbers dialed for which no privacy expectation exists). Based on this established jurisprudence, this Court in State v. Bone, supra, held that a defendant does not have a reasonable expectation of privacy in the call detail record log associated with his phone number.
Here, pursuant to the exigent circumstances request, Sprint/Nextel provided Lieutenant Russo with a call detail record log from Isaac’s cell phone. This log was then analyzed and used to obtain a court order for defendant’s cell phone 12i.records, due to the high volume of calls made between Isaac and defendant around the times of the robberies. Defendant does not have a reasonable expectation of privacy in the call detail record log associated with his phone number or that of Isaac’s phone number, and thus, no infringement of his Fourth Amendment right occurred. Accordingly, we find no error in the trial court’s denial of the motion to suppress the evidence obtained as a result of the exigent circumstances form.[12]
ERRORS PATENT REVIEW
We have also reviewed the record for errors patent and have found none. La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990).
Accordingly, for the reasons set forth herein, we affirm defendant’s convictions and sentences.
AFFIRMED

. Jonathan R. Isaac was also named as a co-defendant in the bill of information; however, he was tried separately from defendant.

. Mr. Patel testified with the assistancé of an interpreter at trial,

. Ms. Arthur was deceased at the timé of trial.

. Defendant signed a consent form giving the officers authority to search his car.

. During rebuttal, Lieutenant Russo and Detective Rumore denied any physical contact with defendant and further denied threatening him into giving a confession.

. On appeal, the State asserts that defendant failed to object to the denial of his challenge for cause as to prospective juror Breedlove, and therefore, did not preserve this issue for appeal. Although defendant did not formally object to the trial court's denial of his challenge for cause, he did give reasons for his challenge of Mr. Breedlove. Defense counsel's actions, which consisted of stating his grounds for a cause challenge and then removing the juror with one of his remaining peremptory challenges, sufficiently preserved this issue for review. See La. C.Cr.P. art. 841(A) and State v. Pinion, 06-2346 (La. 10/26/07), 968 So.2d 131, 136 (per curiam ).

. On appeal, defendant relies on State v. Galliano, 93-1101 (La.App. 1 Cir. 5/5/95), 655 So.2d 538, to support his contention that the trial court erred in denying his challenge for cause as to Mr. Breedlove. We have reviewed the Galliano case and find it to be distinguishable from the instant case. In Galliano, no attempt was made to rehabilitate the prospective juror by further questioning after she indicated that she had some reservations about whether she would be able to keep an open mind; however, in the instant case, the challenged juror was rehabilitated regarding any alleged partiality elicited by defense counsel during his questioning.

. A ruling made adversely to the defendant prior to trial upon a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement. La, C.Cr.P. art. 703(G).

. Even though defendant testified about the alleged coercion at trial, he is nonetheless precluded from raising on appeal the issue of whether the trial court erred in denying his motion to suppress based on police coercion. The Louisiana Supreme Court has stated:
"We have never allowed a defendant to allege facts for the first time in trial testimony which would support a new argument for suppression of evidence, and have a reviewing court consider those facts in determining whether the district court should have granted a motion to suppress on grounds that were never argued to, or considered by, the district court,” State v. Montejo, 40 So.3d at 969-70.

.The State has the burden of proving the admissibility of a purported confession or statement by the defendant. La. C.Cr.P. art. 703(D).

. Although this phone number came back as registered to defendant's wife, the number *727 was connected to defendant through a field interview card relating to defendant and his wife that was in the computer data base.

. The trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Butler, 01-907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.