JOHNSON, J. h Defendant appeals his convictions and sentences for five counts of armed robbery challenging the sufficiency of the evidence, the denial of his motion to suppress the evidence, and the- imposition of sentence without reasons. For the reasons that follow, we affirm Defendant’s convictions and sentences. • Defendant, Jonathan Isaac, was charged in a bill of information on May 18, 201Í with five counts of armed robbery in violation of La. R.S. 14:64.[1] He pled not guilty and proceeded to trial on June 27, 2016 before a 12-person jury. After a three-day trial,-the-.jury found Defendant■ guilty as charged , on all- five counts. On July 18, 2016, the trial court sentenced Defendant to 55 years imprisonment on each count without the benefit of probation, parole or suspension of sentence, to run concurrently with each other. Pursuant to the State’s pre-trial notice of intent to invoke firearm sentencing provision under La. R.S. 14:64.3, the- trial court further sentenced Defendant to an additional five years imprisonment on each count, also to be served without benefits, to run eoncurrently with each other and consecutively to the concurrent 55-year sentences. Prior to sentencing, the State had filed a multiple offender bill of information as to count one, alleging Defendant to be a second felony offender. After a hearing on August 18, 2016, the trial court adjudicated Defendant a second felony offender, vacated his sentence on count one, and resen-tenced Defendant on count one under La. R.S. 15:529.1 to 55 years imprisonment, to run concurrently with his sentences on counts two, three, four, and five. The trial court further ordered that the five-year enhancement under La. R.S. 14:64.3 on count one be served consecutively to the 55-year enhanced sentence. J¿FACTS This case arises from a series of five armed robberies that occurred at various Jefferson Parish businesses over the span of approximately one month. The details of each armed robbery are as follows. March 6, 2011—Armed Robbery of Ashley Arthur and Jayeshkumar Patel at the Subway on Barataría Boulevard (Counts One and Two) On March 6, 2011, Jayeshkumar Patel, manager at the Subway restaurant on Bar-ataría Boulevard in Marrero, and-Ashley Arthur, an employee, were working when they were robbed at gunpoint. Surveillance footage from the robbery depicted two men, armed with guns, dressed in dark pants, wearing hats and coverings on their faces, enter the restaurant and take money from Mr. Patel’s wallet and the cash register. Mr. Patel testified that approximately one thousand dollars was taken from the cash register and. one hundred dollars was taken from him. Outside the business, a Newport brand cigarette butt was discovered. The cigarette butt was sent to a DNA lab for testing, which revealed the cigarette butt was consistent with the DNA profile obtained from a reference sample of Defendant. March 13, 2011—Armed Robbery of Adrian Labeaud and Dana Rhea at the Subway on Jefferson Highway (Counts Three and Four) On March 13, 2011, Dana Rhea and Adrian Labeaud were working at a Subway on Jefferson Highway when two armed men entered the restaurant from the backdoor. One of the perpetrators ordered Ms. Rhea to crawl .on the floor to the cash register .where she then opened the register and gave the man the cash. While Ms. Rhea was at the cash register, the second assailant put a gun to Mr. Labeaud’s side and instructed him to keep his face down towards the ground.[2] After learning the whereabouts of the safe from Mr. La-beaud, the men also ^removed money from the safe before instructing Ms. Rhea and Mr. Labeaud to crawl to the back of the store and wait there. Deputy Richard Uyeda of the Jefferson Parish Sheriffs Office (“JPSO”) responded to the armed robbery. When he arrived, Mr. Labeaud and Ms. Rhea informed Deputy Uyeda that two black males, wearing bandanas over their faces and brandishing semi-automatic handguns, entered the store from the rear entrance and stole money from the cash register and the safe before ordering them to the ground and fleeing. As in the March 6, 2011 robbery, a Newport brand cigarette butt was discovered outside of the restaurant, and DNA analysis indicated that Defendant was the donor of the DNA on the cigarette butt. The police also obtained surveillance footage of the robbery, which depicted similarities to the March 6, 2011 robbery. March 24, 2011—Armed Bobbery of Nicholas Ramsak at GameStop on Belle Promenade (Count Five) On the evening of March 24, 2011, Nicholas Ramsak was working at the GameS-top on Belle Promenade to Marrero when he was robbed at gunpoint. Mr. Ramsak testified that two men, one of whom was armed with a gun, entered the store, demanded the money from both cash registers, took the cash, ordered him to the ground, and then fled. Fingerprints taken from a video gaming accessory cabinet located behind the counter, which was inaccessible to the public, matched those of Defendant’s. An arrest warrant for Defendant and a search warrant for his residence was obtained. Defendant was arrested and a pack of Newport brand cigarettes was recovered to the room to which he was arrested. Additionally, a search of Defendant’s residence revealed clothing that matched the description of the clothing worn by one of the suspects from some of the robberies. | information obtained from Defendant’s phone records further indicated that co-defendant Savage’s phone was contacted frequently around the times of the robberies. Moreover, celr phone tower information obtained from Defendant and Savage’s cell phone records placed both phones near the location of the robberies, at the times they occurred. The police subsequently obtained an arrest warrant, for Savage and a search warrant for his residence. Articles of clothing similar to the ones depicted in the surveillance videos were among items seized as a result of the search of Savage’s residence and vehicle.[3] Following Savage’s arrest, he was transported to the investigations bureau where, after being advised of his rights, he confessed to committing the armed robberies with Defendant and further identified Defendant from a photograph, stating that he had known him for a number of years. Savage also identified himself and Defendant from several of the screen shots taken from the surveillance videos of the robberies. During trial in this case, Savage testified that he had been convicted of the armed robberies with which Defendant was also being charged. He denied identifying Defendant as having committed the armed robberies with him, despite being confronted with the statement he provided to the police following his arrest. He maintained that he provided the statement under duress after being threatened by the police.[4] ISSUES On appeal, defense counsel’s sole assignment of error is that the trial court erred to denying his motion to suppress the evidence. Defendant filed a pro se supplemental brief also challenging the denial of the motion to suppress and | ¿raising two additional assignments of error relating to the sufficiency of the evidence and sentencing. DISCUSSION Sufficiency of the Evidence[5] In his pro se assignment of error, Defendant asserts the evidence was insuf-fieient to find him guilty of the charged armed robberies. He argues that identity is an essential element of the crimes and that the State failed to prove he was involved in the crimes beyond a reasonable doubt.[6] _ In- reviewing the sufficiency of the evidence,- an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince -a rational trier of fact that all of the elements of the crime have been proven, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La. App. 5 Cir. 4/15/08); 985 So.2d 234, 240. Rather, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. Id. Defendant in the instant case was found guilty by a jury of five counts of armed robbery. Under La. R.S. 14:64, to support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything |ñof value from the person of another by use of force or intimidation while armed with á dangerous weapon. State v. Thomas, 08-813 (La. App. 5 Cir. 4/28/09); 13 So.3d 603, 606, writ denied, 09-1294 (La. 4/5/10); 31 So.3d 361. Encompassed within proving the elements of an offense is the necessity of.proving the identity of the defendant as the perpetrator. State v. Ray, 12-684 (La. App. 5 Cir. 4/10/13); 115 So.3d 17, 20, writ denied, 13-1115 (La. 10/25/13); 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misiden-tification in order to carry its burden of proof. Id. Defendant does not argue that the State failed to establish any of the essential statutory elements of his convictions, but rather contends the State failed to prove beyond a reasonable doubt his identity as the perpetrator of the armed robberies. The testimony adduced at trial established that the witnesses did not see the faces of the perpetrators of the armed robberies because their faces were covered. The evidence showed that at each- of the armed robbery locations, two -black men, armed with guns,[7] wearing coverings on their faces, entered the businesses and stole money from the employees, cash registers and/or safe. Surveillance footage from all three armed robberies were similar in that they depicted the robberies being committed in the same manner and involved suspects clothed in the same or similar distinct apparel. Upon further investigation into the armed robberies, officers recovered two Newport brand cigarette butts from the scenes of the two Subway robberies. The cigarette butts were tested and found to match Defendant’s DNA. In addition, a fingerprint taken from a video gaming accessory cabinet, not accessible to the public, at the .GameS-top robbery matched that of Defendant’s. Moreover, analysis of the surveillance footage from the robberies was consistent with Defendant’s general physical description, and , a search, of Defendant, and co-17defendant Savage’s residences revealed clothing matching the description of the robbery suspects. Defendant was later arrested and a pack of Newport cigarettes was found nearby. Moreover, a review of Defendant’s cell phone records revealed that he was in frequent contact with Savage around the times of the robberies, and cell phone tower information placed both Defendant and Savage’s phones near the locations of the robberies at the time they occurred. At trial, the State also presented evidence that upon Savage’s arrest, Savage confessed to committing the armed robberies with Defendant. Although Savage testified that he lied to the police, the trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 08-384 (La. App. 5 Cir. 9/16/03); 858 So.2d 80, 84, writ denied, 03-2745 (La. 2/13/04); 867 So.2d 688. It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La. 10/16/95); 661 So.2d 442, 443. Based on this evidence, we find the State sufficiently negated any reasonable probability of misidentifieation of Defendant as perpetrator of the five armed robberies. Therefore, we find sufficient evidence to support Defendant’s armed robbery convictions. Denial of Motion to Suppress In this counseléd assignment of error, Defendant argües he was denied his' due process rights when an exigent circumstances request was used by law enforcement to track his cellular phone despite the fact that none of the requisites for the issuance of-'such a request were met. As such, Defendant maintains the trial court erred in failing to grant his motion to suppress the evidence based on the unlawfully obtained exigent circumstances- request. | «Defendant filed a pre-trial motion to suppress, which was heard on October 1,. 2013. The facts adduced at the suppression hearing, as well as at trial,[8] establish that after determining Defendant’s identity from fingerprints located at the scene of one of the robberies, a search warrant for Defendant’s residence was obtained and executed. While at Defendant’s residence, Defendant’s girlfriend provided the officers with Defendant’s cell phone number. The police then executed an “exigent circumstances request, form” addressed to Sprint/Nextel, seeking Defendant’s subscriber information, call detail records, cell site information, precision location of the mobile device (GPS), and any text messages available, Sprint/Nextel provided the requested information, which included a call detail log based on Defendant’s cell phone use between March 18, 2011 and March 25, 2011. From this log, it was discovered that a certain telephone number had contacted Defendant numerous times around the times/dates of the armed robberies. The police obtained a court order for the cell phone records associated with that incoming cell phone number, which was determined to belong to Savage. GPS tracking also obtained from the exigent. circumstances form provided the officers with Defendant’s location, enabling them to arrest him pursuant to the previously issued arrest warrant. JPSO Detective .Wayne Rumore, who was involved in the investigation, indicated that it was necessary to obtain an exigent circumstances request to locate Defendant in order to “prevent another crime from happening, or prevent flight.” JPSO Captain Dax Russo, who was also involved in the investigation, explained that the exigent circumstances request form, which is not signed by a judge but by the issuing officer who declares under penalty of perjury that the information | contained on the form is true and correct, requires the officer to declare an exigent situation involving either immediate danger of death or serious bodily injury to any person, conspiratorial activities characteristic of organized crime, or an immediate threat to a national security interest. In indicating that “immediate danger of death or serious bodily injury to any person” was present in this case, Captain Russo stated: We have Heroin addicts running around Jefferson Parish robbing businesses that are occupied by civilians. Placing them on the ground face down with a gun to the back of their head. We felt that it was a matter of time before a gun could of [sic] accidentally discharged, or one of the victims didn’t cooperate, and could become a victim of a homicide. So, we felt there was an immediate threat to one of the citizens [sic] lives in this parish.' He further testified at the hearing that he received additional information that Defendant “might become violent towards police and flee the area.” At the conclusion of the hearing, Defendant moved to suppress the evidence obtained as a result of the exigent circumstances request form, arguing that the form, obtained without a judge’s signature, contained false information provided ■ by Captain Russo regarding the exigent circumstances which allowed for the warrant-less search of his cell phone information. The court denied Defendant’s motion to suppress evidence, finding there were exigent circumstances “based on the natures of the crimes” and noting that the information provided by Captain Russo regarding the exigency of the situation appeared credible and was not inconsistent. On appeal, Defendant argues that his expectation of privacy was violated when the police used an exigent circumstances request to track his cell phone and obtain his location without justification. He contends the police failed to meet the requirements for an exigency. In particular, Defendant contends that the robberies in the present matter were non-violent and did not cause injury to any person. He maintains that the exigent circumstances request was based on misleading and [ minsufficient information and, thus, not validly obtained. As such, Defendant asserts the resulting evidence should have been suppressed. In a hearing on a motion to suppress, the State bears the-burden of establishing the admissibility of evidence seized without a warrant. The trial court is afforded great discretion in ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Lee, 05-2098 (La. 1/16/08); 976 So.2d 109, 122. In this case, the police requested subscriber information, call detail records with cell site information, and the precise GPS location of Defendant’s cell phone from Sprint/Nextel pursuant to an exigent circumstances request. In 2011, 18 U.S.C. § 2702(c)(4) of the Stored Communications Act (SCA) authorized cell phone service providers to disclose, without a warrant, a record or other information pertaining to a subscriber to or customer of [cell phone] service ... to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of-information relating to the emergency. ■ Congress thus deemed it reasonable, to subordinate any individual privacy interest in cell phone location information to society’s more compelling interest in preventing an imminent threat of death or serious bodily injury. United States v. Caraballo, 963 F.Supp.2d 341 (D. Vt. 2013). “Because there is a. strong presumption of constitutionality due to an Act of Congress, especially when it turns on what is ‘reasonable,’ ... the Court should be reluctant to decide that a search thus authorized by Congress was unreasonable and that the Act was therefore unconstitutional.” United States v. Watson, 423 U.S. 411, 416, 96 S.Ct 820, 46 L.Ed.2d 598 (1976) (internal citations and quotation marks omitted). Of note, the SCA offers no ■ suppression remedy for criminal defendants. See Orin S. Kerr, A User’s Guide to the Stored Communication Act, and a Legislator’s Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1241 (2004). Rather, a Incriminal defendant must seek protection for electronic communications under the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Loui-> siana Constitútion, which prohibit unreasonable searches and seizures. A person is constitutionally protected against unreasonable search and seizure of his house, papers, and effects. U.S. Const, amend. IV;' La. Const, art. I, § 5 (1974). Thus, a search and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and thing(s) to be seized. Warrantless seizures are per se unreasonable unless they can be justified under one of the narrowly drawn exceptions to the Fourth Amendment’s warrant requirement. State v. Freeman, 97-1115 (La. App. 5 Cir. 12/29/98); 727 So.2d 630, 634. However, a defendant only has standing to challenge an infringement on his Fourth Amendment right when he is able to claim a justifiable, reasonable, or legitimate expectation of privacy in the item seized. Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). To determine if a defendant has a reasonable expectation of privacy, a court must not only .consider whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. Ragsdale, 381 So.2d 492 (La. 1980). Defendant does not argue that the exigent circumstances request issued to Sprint/Nextel in this case violated the warrant requirement of the Fourth Amendment.[9] Rather, he attacks the exigent circumstances request for its veracity, | ^claiming that the affiant, Captain Russo; was untruthful in his “exigent description”- and that none of the three delineated exigent situations required, to obtain the information sought pursuant to the exigent circumstances-request existed. The warrant requirement of the Fourth Amendment must yield in those situations in which exigent circumstances require law enforcement officerp to act without delay. United States v. Moreno, 701 F.3d 64, 72-73 (2d Cir. 2012), cert. denied, 569 U.S. 1032, 133 S.Ct. 2797, 186 L.Ed.2d 864 (2013). In such circumstances, “the exigencies of the situation make, the needs of law enforcement so- compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.” Kentucky v. King, 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) (internal quotation marks omitted) (quoting Mincey v. Arizona, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Under the circumstances of this case, we find that exigent circumstances justified law-enforcement obtaining the real-time :GPS location of Defendant’s cell phone to determine his location. Exigent circumstances have been described as an “emergency or dangerous situation” and as circumstances “in which police action' literally must be ‘now or never’ to preserve the evidence of the crime.” Payton v. New York, 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980); Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973). Exigent circumstances may arise from the need to prevent the offender’s escape, to minimize the possibility of a violent confrontation which could--cause injury to the officers and the public, and Lato preserve evidence from destruction or, concealment. State v. Brisban, 00-3437 (La. 2/26/02); 809 So.2d 923. “The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others.” Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967); Riley v. California, — U.S. —, 134 S.Ct. 2473, 2494, 189 L.Ed.2d 430 (2014). The issue in this' case turns on whether the circumstances known to law enforcement and presented to Sprint/Nex-tel were within the category of “exigent circumstances” that permit, warrantless searches. “The core question is whether the facts ... would lead a reasonable, experienced officer, to believe that there was an urgent need to ... take action.” United States v. Klump, 536 F.3d 113, 117-18 (2d Cir. 2008), cert. denied, 555 U.S. 1061, 129 S.Ct. 664, 172 L.Ed.2d 638 (2008) (internal citations and quotation marks omitted). “A district court’s determination as to whether exigent circumstances existed is fact-specific, and will not be reversed unless clearly erroneous.” United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990) (en banc), cert. denied, 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991) (citations omitted). At the time the exigent circumstances request was made to Sprint/Nextel, three armed robberies, involving five victims, in Jefferson Parish had been committed at various businesses over the. span of less than one month. The perpetrators of the crimes were armed with firearms, and as Captain Russo testified, it was only a matter of time before a gun accidentally discharged or a victim-,wasi shot because he was uncooperative. ¡Video surveillance evidenced the violent nature of the armed robberies, depicting armed gunmen entering the businesses and forcing the victims to the ground, face down, with a gun pointed to the back of their heads. The police believed Defendant was involved in these | warmed robberies and had information he “might become violent towards police and flee the area.”[10] Because of the frequency and volatile nature of the violent crimes that had been committed, exigent circumstances justified GPS tracking of Defendant’s phone to determine his location in order to effectuate his arrest, pursuant to a validly issued arrest, warrant, in order to protect the public against additional crimes. Additionally, Sprint/Nextel’s disclosure of the GPS tracking information was authorized by the SCA and the use of the real-time GPS location of Defendant’s cell phone was no more expansive than necessary to address the exigency that existed. (See United States v. Takai, 943 F.Supp.2d 1315 (D. Utah 2013), where the court found exigent circumstances sufficient to obtain GPS “pinging” data from the service provider to locate the defendant under the SCA without a warrant, where the defendant was. a suspect in several armed robberies and officers believed the defendant was armed and dangerous and that another armed robbery might be imminently forthcoming). Further, in addition to exigent circumstances, the police had a good faith, reasonable belief that applicable law authorized the obtaining of Defendant’s cell phone records in the circumstances of this case. In Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), the Supreme Court concluded that its holding in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), “that the Fourth Amendment exclusionary rule does not apply to evidence obtained by police officers who acted in objectively reasonable reliance upon a search warrant issued by a neutral magistrate, but where the warrant was ultimately found to be unsupported by probable cause,” should be extended to instances in which “officers act in objectively reasonable reliance upon a statute authorizing | ^warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment.” Krull, 480 U.S. at 342, 107 S.Ct. 1160. Thus, even though the SCA has hot been ruled unconstitutional and Defendant does not challenge its constitutionality, suppression in the instant matter is not a viable remedy. See United States v. Takai, supra (ruling that based upon the emergency provisions of the SCA, “even if the court were required to find that [law enforcement] acquired the CSLI [cell site location information] in violation of the defendant’s Fourth Amendment rights, the Leon good faith exception, as further applied by Illinois v. Krull, 480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), would remove suppression as an available remedy”). Accordingly, we find the trial court properly denied Defendant’s motion to suppress based on exigent circumstances, the SCA, and the officers’ reasonable good faith reliance on applicable law.[11] Sentencing In this pro se assignment, Defendant requests his sentences be vacated and the trial court be ordered-to state reasons for the sentences • imposed under La. C.Cr.P. art. 894.1. Defendant argues that by imposing concurrent 60-year sentences on each count, the trial court effectively sentenced him—a 54-year-old second felony offender—to a life sentence when no harm was levied against the victims and he was never clearly identified as the perpetrator of any of the robberies. He maim tains that a life sentence was not likely the trial court’s intention. We note that Defendant did not raise the issue of the trial court’s compliance with La. C.Cr.P. art. 894.1 below and,, thus, is precluded from raising it | infor the first time on appeal.[12] See State v. Muth, 13-1003 (La. App. 5 Cir. 6/24/14); 145 So.3d 495, 498-99. Errors Patent We have reviewed the record for errors patent pursuant to La. C.Cr.P. art. 920 and find several errors in the State of Louisiana Multiple Offender Uniform Commitment Order (MO-UCO) that require corrective action. First, the MO-UCO contains the incorrect offense date on counts three and four. The record reflects counts three and four were committed on March 13, 2011, and not on March 12, 2011, as is incorrectly indicated on the MO-UCO. Second, the adjudication date is incorrect on the MO-UCO, referencing July 18, 2016 (the date Defendant’s original sentences were imposed), when Defendant was convicted on June 29, 2016. Third, the MO-UCO reflects the date Defendant was resentenced as a multiple offender but does not reflect the date Defendant’s original sentences were imposed, which was July 18, 2016. Fourth, both the original uniform commitment order (UCO) and the MO-UCO do not reflect that Defendant’s sentences on each count were enhanced under La. R.S. 14:64.3. Finally, on the MO-UCO, the box which asks whether the sentencing was part of a multiple bill proceeding is checked “No,” when it should be “Yes,” yet on the original UCO it is checked ‘Tes,” when it should be “No.”[13] | t/Thus, we find it necessary to remand this matter for correction of the referenced UCO and MO-UCO errors. We further direct the Clerk of Court of the 24th Judicial District Court to transmit the corrected UCO and MO-UCO to the officer in charge of the institution to which Defendant has been sentenced and the Department of Correction’s legal department. See State v. Long, 12-184 (La. App. 5 Cir. 12/11/12); 106 So.3d 1136, 1142. DECREE For the foregoing reasons, Defendant’s convictions and sentences are affirmed. The matter is remanded for the correction of the UCO and MO-UCO as instructed herein. CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENTS . Damion Savage was also named as a co-defendant in the bill of information; however, he was tried separately from Defendant, Co-defendant Savage’s convictions and sentences were affirmed by this Court on appeal. See State v. Savage, 16-511 (La. App. 5 Cir. 4/12/17); 218 So.3d 714. . Mr. Labeaud described the two assailants as black males, approximately five foot nine inches, "two hundred something pounds,” with a bandana or shirt covering their faces, and carrying handguns. . Savage signed a consent form giving the officers authority to search his vehicle. . JPSO Detective Wayne Rumore denied threatening Savage. . .When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as, to trial errors is necessary. Id. . Defendant also requests that this Court “find that evidence was insufficient to find defendant guilty of the enhancement clause.” This one sentence is the only argument given by Defendant with respect to this issue. We find Defendant has failed to brief this potential grievance and, thus, find it abandoned under Uniform Rules, Court of Appeal, Rule 2-12,4. See State v. Camp, 16-473 (La. App. 5 Cir. 3/15/17); 215 So.3d 969, 973. Nonetheless, we note that a review of. the record under State v. Raymo, 419 So.2d 858, 861 (La. 1982), reflects that the State presented sufficient evidence to establish the firearm enhancement in this case. . At the GameStop location, Mr. Ramsak testified that he only saw one of the men with a gun. . In determining whether the trial court’s ruling on a defendant’s motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial. State v. Raines, 00-1941 (La. App. 5 Cir. 5/30/01); 788 So.2d 635, 639, writ denied, 01-1906 (La. 5/10/02); 815 So.2d 833. . In co-defendant Savage's appeal, State v. Savage, 16-511 (La. App. 5 Cir. 4/12/17); 218 So.3d 714, Savage, unlike Defendant here, argued that the exigent circumstances request violated the warrant requirement of the Fourth Amendment to the United States Constitution by allowing his phone records to be obtained without independent judicial consideration of the evidence. We concluded that Savage did not have a reasonable expectation of privacy in the call detail record log associated with his phone number or that of Defendant’s phone number, and thus, no infringement of his Fourth Amendment right occurred. Although Defendant does not raise the issue that the exigent circumstances request violated his Fourth Amendment right, we note that several jurisdictions have found' that the "pinging” of-a defendant's cell phone to obtain its- location does not constitute a search within the meaning of the Fourth Amendment, (See United States v. Caraballo, 963 F.Supp.2d 341 (D. Vt. 2013), where the government’s warrantless use of real-time cell phone location information did not constitute a search under the Fourth Amendment because the defendant did not have a reasonable expectation of privacy where the defendant was on notice that disclosure of his cell phone location information to law enforcement might occur in the event of an emergency; United States v. Skinner, 690 F.3d 772 (6th Cir. 2012), cert. denied, — U.S. —, 133 S.Ct. 2831, 186 L.Ed.2d 913 (2013), where the Sixth Circuit held that there was no .Fourth Amendment violation when federal agents used data emanating from the defendant’s cell phone to determine its real time location as he transported drugs along the highway. The agents "pinged” the phone along the way to locate it and arrested the defendant, The federal appeals court found that the defendant did not have a reasonable expectation of privacy in the GPS data and rejected his argument that the use of the,GPS location information emitted from his cell phone was a warrantless search in violation of the Fourth Amendment; Devega v. State of Georgia, 286 Ga. 448, 689 S.E.2d 293 (2010), where Georgia's highest • court rejected a cjaim by the defendant that his attorney was ineffective for failing to challenge the war-rantless "ping” of his cell phone as a violation of his Fourth Amendment rights. The court held that the warrantless monitoring of a defendant's cell phone location revealed the same information as visual surveillance so there was no Fourth Amendment violation; People v. Moorer, 39 Misc. 3d 603, 959 N.Y.S.2d 868 (NY County Court 2013) concluding that "by a person's voluntary utilization, through GPS technology, of a cell phone, a person necessarily .has no reasonable expectation of privacy with, respect to the phone's location—vis-a-vis the pinging—even though he maintains what may be a reasonable ex- , pectation of privacy in the content of his phone conversations.”) . The Louisiana Supreme Court, has found exigent circumstances existed in those instances where a subject, attempts to flee in order to avoid arrest. State v. Abadie, 390 So.2d 517 (La. 1980). . See United States v. Caraballo, 963 F.Supp.2d 341 (D. Vt. 2013), finding that the defendant posed an exigent threat to the undercover officers and confidential informants involved in the drug operation which justified the ."pinging” of his cell phone, which at most constituted a limited intrusion into his privacy interest, objectively could be viewed as plausibly consistent with existing law, and which the officers, used in the ..most limited way .to achieve their goal. . However, we note the trial court’s failure to articulate every circumstance listed in La. C.Cr.P. art 894.1 will not require a remand for re-sentencing if there is an adequate factual basis for the sentence contained in the record. State v. Brooks, 00-953 (La. App. 5 Cir. 2/11/03); 841 So.2d 854, 858. There is an adequate factual basis for Defendant’s sentences in the record, The same judge who sentenced Defendant also listened to the evidence presented at trial. The evidence showed that Defendant and his cohort entered various businesses in Jefferson Parish, taking control of the employees, and robbing them at gunpoint. Armed robbery is designated as a crime of violence—La. R.S. 14:2(B)(21)—and the Louisiana Supreme Court has recognized the highly charged atmosphere at the scene of an armed robbery, noting that it is conducive to violence and fraught with danger of serious physical ham}, not only to the victim, but to any person at the scene. See State v. Levi, 259 La. 591, 250 So.2d 751 (1971). Additionally, Defendáht’s prior criminal history, including his conviction for simple robbery in 2003, was established at the multiple offender hearing. These facts provide an adequate factual basis Defendant's 60-year sentences. . It is noted that the deficiencies in the MO-UCO pertain to the MO-UCO issued on August 31, 2016, after a Nunc Pro Tunc entry was made by the court on August 20, 2016, to correct the omission of a State’s exhibit introduced at the multiple bill hearing held on August 18, 2016. Some of the referenced deficiencies, including the incorrect offense date on counts three and four, and the incorrect demarcation that the resentencing was not part of a multiple bill proceeding, are not present in the first MO-UCO issued on August 24, 2016, prior to the Nunc Pro Tunc entry.